**INTERCO, INCORPORATED,**
Plaintiff, Appellee,

v.

**The FIRST NATIONAL BANK OF BOSTON, Defendant, Appellant.**

**No. 77–1048.**

United States Court of Appeals,
First Circuit.

Argued April 6, 1977.

Decided Aug. 16, 1977.

William G. Young, Boston, Mass., with whom Joseph L. Kociubes and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant, appellant.

Gordon T. Walker, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, MARKEY, Chief Judge,* and CAMPBELL, Circuit Judge.

---

\* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

MARKEY, Chief Judge.

Appeal by defendant First National Bank of Boston ("Bank") from the order[1] of the District Court for the District of Massachusetts granting the motion for a preliminary injunction filed by plaintiff Interco, Incorporated ("Interco"). The dispositive issue is whether Interco carried its burden of establishing the irreparable harm prerequisite to injunctive relief. We hold that Interco did not. We therefore vacate the injunction and remand the case for further proceedings.

## Background

The facts undisputed on this record may be summarized as follows: (1) Interco, as buyer, and Schwartz,[2] as seller, entered into a January, 1976, contract in which Interco was buying approximately 5,000 dozen shirts made in Taiwan. To finance the purchase, Interco secured two irrevocable letters of credit from the Bank.

(2) Letter of Credit No. 89343, dated February 3, 1976, named Schwartz as beneficiary and was for $222,360.00. It stated that drafts drawn on it must be accompanied by, *inter alia,* invoices and bills of lading for 3400 dozen shirts from Taiwan and a reciprocal draft drawn on Schwartz payable to Interco "for full amount of this letter of credit." It further stated that "Partial shipments [are] NOT permitted" and that drafts drawn on it had to be presented to the Bank by July 15, 1976. It was subsequently amended several times. An amendment dated May 21, 1976, provided for two shipments of 1715 dozen each on two dates. Another amendment, dated June 24, 1976, extended the deadline for presenting drafts to July 30, 1976. "All other conditions remain unchanged" appeared in each amendment.

(3) Letter of Credit No. 91338, dated May 10, 1976, also named Schwartz as beneficiary and was for $131,519.40. It recited that drafts drawn on it must be accompa-

nied by invoices and bills of lading for 2011 dozen shirts from Taiwan and it also required a reciprocal draft drawn on Schwartz payable to Interco "for full amount of this letter of credit." It also recited "Partial shipments [are] NOT permitted." It contained a deadline of September 30, 1976, for presenting drafts.

(4) On June 30, 1976, the Bank received the documents relating to the first shipment under the first letter of credit, including a draft for $62,130.00 (less than the full amount of the letter) and a reciprocal draft dated June 28, 1976, drawn on Schwartz for $62,130.00. The Bank paid Schwartz, debited Interco's account in the amount of $62,232.66 ($62,130.00 plus the Bank's commission) and forwarded Schwartz's reciprocal draft to Interco.

(5) On July 8, 1976, after receiving the first shipment (which was allegedly not in accordance with the contract requirements), Interco endorsed Schwartz's reciprocal draft for $62,130.00 and presented it to the Bank for collection. The Bank forwarded it to Schwartz's bank (Manufacturers Hanover Trust Co.) for payment.

(6) On July 16, 1976, Schwartz presented to the Bank a second draft, for $49,050.00, under the first letter of credit, accompanied by a second reciprocal draft for that amount. The Bank paid Schwartz $17,550.00 (not explained) and debited $49,123.81 to Interco's account ($49,050.00 plus the Bank's commission).

(7) On July 19, 1976, Schwartz's first reciprocal draft was returned to the Bank because payment had been refused, and the Bank notified Interco of the refusal.

(8) On July 22, 1976, after receiving 950 dozen shirts from Schwartz, Interco notified Schwartz that it was cancelling its shirt orders and demanded that the Bank stop all payments to Schwartz under both letters of credit.

(9) On July 23, 1976, Interco filed a complaint against Schwartz and the Bank in

---

1. The district court's memorandum opinion, containing the order, is unreported.

2. Defendants Stuart F. Schwartz and Stuart F. Schwartz, Inc. are collectively referred to as "Schwartz."

Suffolk County Superior Court of the Commonwealth of Massachusetts (Docket No. 15798) alleging, *inter alia,* that the Bank had made improper payments under the first letter of credit and praying that damages be assessed, that Schwartz be enjoined from presenting drafts against the letters of credit, and that the Bank be enjoined from making payment.

(10) On July 28, 1976, Interco filed in the district court the present complaint, which is substantially the same as that in the state court.[3] It alleges that the Bank has made improper payments under the first letter of credit and it states that Interco "has made demand upon the * * * [Bank] that it credit * * * [Interco's] account for amounts wrongfully paid to * * * [Schwartz] against letter of Credit No. 89343 and that future drafts against letters of Credit No. 89343 or 91338 presented by * * * [Schwartz] be refused." There are six prayers: that the Bank be enjoined from making payments; that Schwartz be enjoined from presenting drafts; that the court interlocutorily order that drafts presented by Schwartz may be rejected without dishonor; that the Bank "be ordered to credit or pay to · * * * [Interco] the amount of $11,356.47[4] wrongfully charged against [Interco] * * * ;" that "the damages caused * * * [Interco] by the wrongful conduct and breach of contract by the defendants be assessed * * * ;" and that the letters of credit "be revoked" and that "the full amounts of such credits be restored to * * * [Interco]."

(11) On July 30, 1976, the Superior Court entered a preliminary injunction restraining Schwartz from presenting drafts against the letters of credit, but entered no injunction against the Bank.

(12) On July 29, 1976, Interco filed the motion for preliminary injunction which is the subject of this appeal.

(13) On August 11, 1976, the lower court held a hearing at which the district judge asked:

> THE COURT: The question is what is the irreparable harm to the plaintiff in the application for injunctive relief?

> MR. SARTORY [Interco's counsel]: Irreparable harm to the plaintiff is an additional $250,000 which might be flowing out. Now, counsel for the bank has made reference to the state court proceeding in connection with that and argued that we have protection because there is an injunction in the state court proceeding against Mr. Schwartz from presenting any drafts. Well, if Mr. Schwartz presents a draft and the bank is not enjoined from paying out, all we have against Mr. Schwartz is a contempt action. And apparently Mr. Schwartz doesn't have the money to pay on the reciprocal draft anyway. So we really are not protected at all. Mr. Schwartz can be in contempt of the state court order and present the draft and if there is no court order preventing the bank from paying it, we are left with a contempt action against Schwartz * * *.

### · The District Court

On November 23, 1976, the district court handed down its memorandum opinion. Citing *Automatic Radio Mfg. Co. v. Ford Motor Co.,* 390 F.2d 113 (1st Cir. 1968), the lower court stated:

> To be entitled to a preliminary injunction plaintiff must make (1) a showing of a likelihood of success upon a trial of the merits of the case, and (2) a showing that it will suffer irreparable harm if the preliminary relief is not granted.

The opinion then summarized Interco's two contentions: (1) that injunctive relief against the Bank was appropriate under Mass.Gen.Laws ch. 106, § 5–114(2)(b)[5] on

---

3. The federal complaint differs only in stating that 12 U.S.C. § 91 prevents state courts from issuing preliminary injunctions against national banking associations.

4. Obviously a typographical error. The state complaint recites "$111,356.47", the sum of the two debits ($62,232.66 plus $49,123.81) made against Interco's account.

5. Mass.Gen.Laws ch. 106, § 5–114(2)(b), in per-

the theory that Schwartz's refusal to honor the first reciprocal draft for $62,130.00 constituted fraud; and (2) that injunctive relief against the Bank was proper because the drafts drawn against the first letter of credit had not complied with its terms (i. e., the reciprocal drafts had not been in the "full amount" of the letter of credit) and because it was likely that the Bank would continue to honor noncomplying drafts in view of the Bank's position that the reciprocal draft did not have to be in the "full amount" of the letter of credit but only had to be in the same amount as the draft drawn against the letter of credit.

The district court bypassed contention (1) but agreed with contention (2):

> Putting to one side at this stage of the litigation plaintiff's claim of fraud, nevertheless the court finds, for the reasons stated below, that plaintiff has made a satisfactory showing that the Bank has not met its duty of care in respect of letter of credit No. 89343 by its willingness to pay drafts which are not accompanied by documents expressly required by the letter of credit. In the first place the Bank is under a duty to examine the documents called for in the letter of credit "with care so as to ascertain that on their face they appear to comply with the terms of the credit . . .". Mass. Gen.Laws ch. 106, § 5–109(2). "[T]he general rule [is] that documents submitted incident to a letter of credit are to be strictly construed." *Banco Espanol de Credito v. State Street Bank,* 385 F.2d 230, 234 (1st Cir. 1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968). The Court of Appeals adopted as a rule of construing letters of credit the principle that the terms be read "as strongly against the issue as a reasonable reading will justify". *Id.* at 237 *citing Fair Pavilions, Inc. v. First National City Bank,* 24 A.D.2d 109, 264 N.Y.S.2d 255, 258 (1965), *rev'd on other grounds,* 19 N.Y.2d 512, 281 N.Y.S.2d 23, 227 N.E.2d 839 (1967). Where the terms of credit

are not ambiguous, they must be met "precisely" if the issuer is to perform. *Courtaulds North America, Inc. v. North Carolina Nat'l Bank,* 528 F.2d 802, 805–06 (4th Cir. 1975).

There is no ambiguity in the letters of credit and supporting documents in this case. In both letters the required documents include a reciprocal draft "for *full* amount of this letter of credit". (Emphasis supplied.) While, as the Bank argues, this term calls for a reciprocal draft in an amount greater than the drafts presented for payment and that it might seem more appropriate for the letter to provide for reciprocal drafts in no greater amounts than the individual drafts presented against the letter of credit, yet this is not what the terms of credit provide.

Unilateral reformation of the terms of credit to make them more "sensible", as the Bank would suggest, would disregard the careful safeguards which are structured in Article 5 of the Uniform Commercial Code. [Here the court cited, in a footnote, Mass.Gen.Laws ch. 106, § 5–101 *et seq.*] "The great utility of letters of credit flows from the independence of the issuer bank's engagement from the underlying contract between beneficiary and customer." *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 323 (1975). The utility and reliability of letters of credit are diminished, and justifiable reliance by a customer upon the disinterested examination of the face of the documents by the issuer of the letter is undermined, when an issuer is left free to make the terms of credit more "appropriate" than the express terms of credit provide. The issuer shall be held strictly to its duty of care in ascertaining whether the terms of credit are complied with.

Here, the Bank has not met its duty of care in respect of letter of credit No. 89343, and has shown a willingness to pay out on the letter of credit against docu-

---

tinent part states: "an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of

fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."

ments which do not comply with the terms of credit. In doing so it has evidenced an intention to continue to engage in wrongful honor of the letters of credit issued by it to Interco.

The district court then turned to irreparable harm:

The question whether Interco has shown that irreparable harm will result to it absent injunctive relief requires a consideration whether an adequate remedy at law is available to Interco. *Celebrity, Inc. v. Trina,* 264 F.2d 956 (1st Cir. 1959). Article 5 of the Uniform Commercial Code is "remarkably silent on claims by customers for wrongful honor". White & Summers, Uniform Commercial Code 629 (1972). The measure of damages for wrongful honor is not dealt with in Article 5, and the proper theory of damages is at best speculative. Thus, it appears that further wrongful honors by the Bank will leave Interco with an uncertain remedy at law, and are likely to cause Interco irreparable harm arising from substantial financial liability on the letters of credit. The court finds that these circumstances show the requisite degree of irreparable harm should injunctive relief be denied.

The district court concluded by issuing the following order:

Accordingly, it is hereby ordered that the defendant First National Bank of Boston, its agents employees and attorneys, be and they hereby are restrained and enjoined from making any payments or credits against letters of credit Nos. 89343 and 91338 or from charging or debiting the account of College-Town Division of Interco, Incorporated, for any such payments or credits unless the documents presented with the demand for payment upon such letters of credit include a reciprocal draft for the full amount of the letters of credit drawn on the beneficiary thereof at 30 days sight.

## OPINION

The dispositive issue [6] is whether Interco established that irreparable harm would have resulted from a denial of the preliminary injunction. We express no view on the merits of the underlying controversy, this appeal being related solely to the grant of the preliminary injunction. *Engine Specialties, Inc. v. Bombardier Ltd.,* 454 F.2d 527 (1st Cir. 1972).

Nor do we express a view on whether Interco established the required likelihood of eventual success. The district court apparently resolved this latter question in favor of Interco solely for purposes of the motion.

Though the district court stated that the Bank had not met its duty of care, it appears that further proceedings in the district court will be necessary to resolve that issue.[7] It would appear necessary, in such proceedings on the merits to determine, *inter alia,* the correct interpretation of the entire first letter of credit, taking into account all of its expressed terms, the effect of the amendments thereto, and the effect of Interco's apparent *failure to object* to the Bank's acceptance of Schwartz's first reciprocal draft in less than the "full amount" of the letter of credit.[8]

An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit * * *.

8. For example, paragraph 9 of the letter of credit states in part:
In case of any variation between any document(s) called for by the Credit * * * and any document(s) accepted by [the Bank] or [its] correspondents, [Interco] shall be deemed conclusively to have waived any right to object to such variation with respect to any action of [the Bank] or [its] correspondents * * * and to have ratified and ap-

---

6. The letters of credit expired on July 30, 1976, and September 30, 1976. When the preliminary injunction issued on November 23, 1976, the time for presenting drafts had passed. However, during the hearing on August 11, 1976, counsel for Interco stated, without challenge, that the Bank had received, prior to July 30, 1976, a third draft against the first letter and that the Bank had not decided whether to pay it. Hence, the case is not moot.

7. The duty is stated in Mass.Gen.Laws ch. 106, § 5–109 ("Issuer's Obligations to Its Customer") which provides in subsection (2):

In *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975), the Supreme Court characterized the "grant of injunctive relief" as "a remedy whose basis 'in the federal courts has always been irreparable harm and inadequacy of legal remedies.' *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–507, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959)." The district court clearly acknowledged the requirement for inadequacy of remedy at law, in citing *Celebrity, Inc. v. Trina, Inc.*, 264 F.2d 956 (1st Cir. 1959). It found that requirement satisfied, however, on the sole ground that: "The measure of damages for wrongful honor is not dealt with in Article 5 [of the Uniform Commercial Code], and the proper theory of damages is at best speculative." On appeal, Interco urges the same ground as sufficient basis to support the preliminary injunction.[9]

The fourth prayer in Interco's complaint prays that the Bank "be ordered to credit or pay to * * * [Interco] the amount of $11,356.47 [sic, $111,356.47 intended] wrongfully charged against * * * [Interco]." Because the measure of recovery under this prayer is thus not at all speculative, the district court must have been referring to Interco's fifth prayer (for "the damages caused * * * [Interco] by the wrongful conduct") when it held that the measure of damages was "at best speculative."

Although Article 5 of the Massachusetts version of the Uniform Commercial Code does not expressly state a measure of damages for wrongful honor, Mass.Gen.Laws ch. 106, § 1–106(1), states: "The remedies provided by this chapter shall be liberally administered to the end that *the aggrieved party [Interco] may be put in as good a position as if the other party [the Bank] had*

*fully performed * * *.*" (Emphasis added.) See *Matsushita Elec. Corp. of Amer. v. Sonus Corp.*, 362 Mass. 246, 284 N.E.2d 880 (1972).

The Massachusetts Code Comment points out that this provision "is a general restatement of the common law theory of contract damages." In *Eastern Mass. St. Ry. Co. v. Union St. Ry. Co.*, 269 Mass. 329, 333, 168 N.E. 781, 782 (1929), the Supreme Judicial Court quoted with approval the following statement from its earlier opinion in *John Hetherington & Sons, Ltd. v. William Firth Co.*, 210 Mass. 8, 21, 95 N.E. 961, 964 (1911):

> The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts.

The "damages" for wrongful honor under Interco's fifth prayer would be the amount of money which would "put [Interco] in as good a position as if [the Bank] had fully performed" as stated in G.L. c. 106, § 1–106(1). This amount may be the total of the two debits made to Interco's account, to wit, $62,232.66 + $49,123.81 = $111,356.47. This is the amount Interco seeks under the fourth prayer, and the bank seems to admit this would be the proper measure of damages.[10] An alternative measure of damages might allow the bank to set off against this amount the present value to Interco, if any, of the shirts delivered. See J. White & R.

proved such action * * * unless [Interco], immediately upon receipt of such documents * * * file[s] objection with [the Bank] in writing.

**9.** Neither the district court nor Interco has ever questioned the Bank's solvency, or its ability to respond to any reasonable award of money damages. In counsel's answer to the district court's question regarding irreparable harm, only the inadequacy of the remedy at law

against Schwartz was discussed in any meaningful sense.

**10.** In its brief before this court, the Bank states:

If it is ultimately determined that the Bank wrongfully paid drafts on the letters of credit in question and therefore wrongfully debited Interco's account, then the amounts wrongfully withdrawn from Interco's account, plus interest, must be repaid to Interco.

Summers, Uniform Commercial Code § 18–7 at 630. But whatever the measure of damages, as to which we do not purport to be definitive, it is clear Interco will have an adequate remedy at law.

On this record, we hold that Interco failed to establish inadequacy of its remedy at law and, therefore, that Interco failed to establish that it would suffer irreparable harm. Accordingly, it was error for the district court to issue the preliminary injunction. We are fully aware of the broad range of discretion governing such matters at the trial level. The error occurring in the present instance, however, rises to a level constituting an abuse of discretion. The order of the district court is *vacated* and the case is remanded for further proceedings consistent with this opinion.