## BATES FABRICS, INC.

v.

### Thomas LeVEEN.

Supreme Judicial Court of Maine.

Argued March 19, 1991.
Decided April 29, 1991.

Clarke C. Hambley (orally), Elizabeth J. Scheffee, Givertz, Lunt & Hambley, Portland, for plaintiff.

Theodore H. Kurtz, Melinda Small (orally), Kurtz & Myers, South Paris, for defendant.

Before ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

Thomas LeVeen appeals from an order of the Superior Court (Androscoggin County, *McKinley, J.*) denying his motion for approval of attachment and trustee process on his counterclaim for indemnification against Third–Party Plaintiff/Appellee, Bates Fabrics, Inc. Because we find that the court applied an incorrect standard to LeVeen's attachment motion, we vacate the order and remand for entry of an order approving the attachment and trustee process.

Bates is a textile mill in Lewiston that has been financially troubled for most of the past decade. Bates was purchased by Minette Mills in late 1986. In recent months, its business losses have mounted and its current ability to pay all of its creditors has been brought into question.[1]

From November 1985 to May 1988, Thomas LeVeen served as Bates director, president and CEO. Before he began his tenure at these posts Bates entered into a contract with its leading salesman, Robert E. Grover, for sale of Bates products on an exclusive regional basis to institutional accounts, and to its largest account, "Prestex." This contract guaranteed Grover a commission of 5% of the purchase price

---

1. LeVeen claims in his affidavit that he believes that Bates is "technically insolvent."

received by Bates. The contract also specified that either party could terminate the contract on 30 days notice without cause. During LeVeen's tenure, the agreement between Bates and Grover was amended on eight separate occasions.[2] Seven of the amendments allowed Grover to represent individual products from other companies that did not compete with Bates products. Another agreement, signed October 31, 1986, amended Grover's contract to entitle him to only 2.5% commission on the Prestex account. The amendment also changed the termination notice from 30 days for any reason to six months for cause, and created a termination date of December 31, 1988.

In December 1988, Grover sued Bates and Minette Mills, Inc., alleging that Bates and Minette had breached the amended sales agreement by not paying earned commissions. In January 1990, Bates brought its third-party complaint against LeVeen, alleging that LeVeen had acted without authority and breached his "fiduciary duty" to Bates by signing the amendments to Grover's contract. Bates sought to hold LeVeen liable if Grover were found entitled to his commissions.

LeVeen counterclaimed that he was entitled to indemnification from Bates under Article XII of the Bates bylaws. These bylaws state, in relevant part, that:

> Any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director, officer, employee or agent of the corporation ... shall be indemnified by the corporation against expenses, including attorneys fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding; provided that no indemnification shall be provided for any person with respect to any matter as to which he shall have been finally adjudicated in any

action, suit or proceeding not to have acted in good faith in the reasonable belief that his action was in the best interests of the corporation.

LeVeen then sought approval of an attachment, including attachment on trustee process, in an amount equaling his projected attorney fees resulting from his defense of the Bates claim. Bates countered that the indemnification agreement covered only suits by a third party against a corporate officer, precluding LeVeen's recovery of attorney fees. In the alternative, Bates argued that the terms of the amendments to the employment agreement between Bates and Grover are on their face persuasive and compelling evidence of LeVeen's bad faith.

The court held a hearing on the attachment and trustee process motion. At the hearing, Bates reiterated the above-mentioned arguments and submitted an affidavit of Harold Bodie in support of its contention that LeVeen had acted in bad faith. Bates also argued that public policy considerations mandate a judicial presumption against such broad indemnification absent specific language permitting it.

LeVeen countered with a copy of the indemnification agreement and with an affidavit stating his opinion as to the soundness of the agreements made with Grover and as to the current insolvency of Bates. His attorney also submitted an affidavit estimating the amount of attorney fees that LeVeen would incur if the case went to trial. LeVeen argued that he had a reasonable chance of recovery and was entitled to attachment to secure his claim. The court denied LeVeen's motion for attachment and trustee process without comment. LeVeen appeals from the denial of his motion.

### I.

 The rules set forth regarding attachment are quite liberal. Although due process questions are always raised when property is attached, the United States Su-

---

**2.** *The agreement was actually modified nine separate times, but one of these amendments was executed on the date of the original agreement, June 4, 1984, before LeVeen began his tenure at Bates.*

preme Court has held that attachment is constitutionally valid even if inquiry is "limited to determination whether there is a reasonable possibility of judgments in the amounts claimed." *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Rules 4A & 4B M.R.Civ.P. allow for attachment and trustee process of property if "such attachment [is] for a specified amount" and if there is a finding by the court that "there is a reasonable likelihood that the plaintiff will recover judgment ... in an amount equal to or greater than the amount of the attachment."

This court has held that the "reasonable likelihood" standards of Rules 4A and 4B do not require the trial court to decide whether "it is more likely than not that [a party] will prevail" but only "whether the underlying claim is substantial enough that there appears to be a reasonable possibility of recovery." *Bowman v. Dussault*, 425 A.2d 1325, 1328 (Me.1981); *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, 351 A.2d 845, 852 (Me. 1976). In the instant case, LeVeen presented both documentary evidence and written affidavits tending to show that he had a right to recover from Bates if it sued him for good faith actions taken as its director. Significantly, the indemnification agreement in the Bates bylaws made no mention of a limitation on LeVeen's indemnification rights to third party suits against LeVeen for action taken on behalf of the corporation. On the contrary, it stated only that he would "be indemnified by the corporation against expenses, including attorneys fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action." This language was subject only to the limitation that LeVeen would not be entitled to indemnification if he were "finally adjudicated in any action, suit or proceeding not to have acted in good faith in the reasonable belief that his action was in the best interest of the corporation or, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful." Based on this evidence, LeVeen has met the standard of showing that he has a reasonable chance of recovery. We need not address the contention that Harold Bodie's affidavit shows that LeVeen exhibited bad faith and violated the business judgment rule. Litigation of the merits of LeVeen's claim should be left for trial. *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, 351 A.2d at 852.

## II.

■ The additional argument that the damages claimed by LeVeen are not specific enough is controverted by our decision in *Bowman v. Dussault*, 425 A.2d 1325 (Me. 1981). In that case, we held that a party can make a sufficiently specific showing of damages if he or she can provide, among other things, evidence "from which some informed projection could be made" as to the amount of damages suffered by the party. *Bowman*, 425 A.2d at 1329. The affidavit submitted by LeVeen's attorney gives a specific figure for the amount of attorney fees already incurred by LeVeen, and further estimates that:

> additional attorney fees and costs incurred by LeVeen in the defense of the third party plaintiff's claims will amount to $7,500 and possibly more, if this matter must go to trial. This amount is based on an estimated 60 additional hours at $125.00 per hour for hearing on LeVeen's motion for attachment; pre-trial conference; and preparation and attendance at a five-day trial, which plaintiff estimates this case will take.

This representation was enough to satisfy the standard of particularity delineated in *Bowman*.

## III.

■ Finally, Bates argues that the court correctly held against LeVeen, because public policy requires that the indemnification agreement be construed narrowly to prevent indemnification when an action is brought by the corporation against an officer or director. We conclude that the history of the Maine Business Corporation Act, 13–A M.R.S.A. §§ 101–1404 (1981 & Supp.1990), establishes a contrary public policy. Section 719 of the Act originally

excluded indemnification in "an action by or in the right of the corporation." P.L. 1971, ch. 439, § 1. Subsequently the Legislature amended section 719 to delete that restriction. P.L.1975, ch. 439, § 7. We have no occasion to reexamine the policy thus established.

The entry is:

Order vacated.

Remanded for entry of an order approving attachment in the amount of $10,956.92.

All concurring.