**Shannon CALVERT, et al.**

**v.**

**Susan CORTHELL, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 4, 1991.

Decided Nov. 8, 1991.

---

John S. Whitman, Richardson & Troubh, Portland, for plaintiff.

Francis Jackson, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Shannon Calvert, and her parents, Charles and Margaret Calvert, appeal from the order entered by the Superior Court (Cumberland County, *Alexander, J.*) denying their motion for approval of attachment and trustee process under M.R.Civ.P. 4A and 4B. Because we agree with the Calverts that the court applied the wrong legal standard to their motion, we vacate and remand with direction to approve the attachment and trustee process.

## I.

The Calverts' complaint against defendants Susan Corthell and Patricia Remington alleges both defamation and intentional infliction of emotional distress. The com-

plaint was accompanied by the motion for approval of attachment and trustee process, supported by four affidavits. The Calvert affidavits present the following factual assertions: Shannon Calvert had dated, off and on, the younger brother of Susan Corthell. She had also been the principal baby-sitter for Susan Corthell's young daughter since 1986. In 1989, Shannon finally broke off her relationship with the brother. After the breakup, Susan Corthell had threatened Shannon Calvert by saying on one occasion, "you're going to get yours!" In August 1990, Shannon Calvert heard from a co-worker that Susan Corthell and Patricia Remington had accused her of sexually abusing Corthell's daughter. She also heard that the allegation had spread to Deering High School and New England Telephone Company, where Patricia Remington worked. Shannon Calvert denies that she has ever abused the child.

The accusation of sexual abuse has devastated Shannon Calvert. She has dropped out of the University of Southern Maine, has been forced to reevaluate the possibility of becoming an elementary school teacher, and has been seeing a psychiatrist on a regular basis. Margaret Calvert and Charles Calvert have been emotionally overcome by the false accusations made against their daughter. An attorney for the Calverts filed an uncontested affidavit stating that the defendants have no liability insurance or security that would cover an award in this case.

Susan Corthell's affidavit in opposition to the attachment motion asserts that her daughter was sexually molested and that her daughter had identified Shannon Calvert as the perpetrator. Susan Corthell attaches a report from Dr. Lawrence Ricci confirming the allegations. Susan Corthell also states that the Calverts were the only ones who have "spent any significant period of unsupervised time" with her daughter.

## II.

■ We entertain appeals from an order denying or granting attachment under the collateral order exception to the final judgment rule. 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.2 at 435 (2d ed. Supp.1981); *See, e.g. Bates Fabrics, Inc. v. LeVeen,* 590 A.2d 528 (Me.1991); *Northeast Investment Co. v. Leisure Living Communities, Inc.,* 351 A.2d 845 (Me. 1976). M.R.Civ.P. 4A and 4B allow for attachment and trustee process of property if "such attachment [is] for a specified amount" and if there is "a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment ... in an amount equal to or greater than the amount of the attachment." Attachment is available on real estate, goods and chattels and other property to satisfy any judgment recovered by the plaintiff. M.R.Civ.P. 4A. Trustee process is considered a form of attachment which places a lien on the defendant's property in the hands of a trustee. 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4B.1 at 134–35 (1970); *Smith v. Davis,* 131 Me. 9, 12, 158 A. 359, 361 (1932). We review a decision to grant or deny attachment under the clearly-erroneous and abuse-of-discretion standards. *Bowman v. Dussault,* 425 A.2d 1325, 1328 (Me.1981).

■ We have previously stated that the rules governing pre-judgment attachment are "quite liberal" and that the "reasonable likelihood of success standard" presents a "relatively low hurdle." *Bates Fabrics,* 590 A.2d at 530; *Ingalls v. Brown,* 460 A.2d 1379, 1381 (Me.1983). The trial court is not required to decide whether "it is more likely than not that [a party] will prevail," but only "whether the underlying claim is substantial enough that there appears to be a reasonable possibility of recovery." *Bowman,* 425 A.2d at 1328; *Northeast Investment Co.,* 351 A.2d at 852.

■ In the instant case, the Calverts' affidavits tend to show that they could recover damages from the defendants on their claims of defamation and intentional infliction of emotional distress. The court, in denying the motion for attachment, did not explicitly apply the "reasonable likelihood of success" standard, nor did it use language that would suggest that the Calverts had failed to meet this low burden. Rather, the court gave an analysis consist-

ent with a finding that a reasonable likelihood of success exists in this case, even though the court denied the motion for attachment. The court stated that the case will be a "very close case on the facts" and will ultimately be determined by an assessment of "credibility." By denying attachment because "the right to recover is not all that clear in the matter," the court ignored our decisions that view the standard as a "relatively low hurdle" and that reject the notion that more is required than a "reasonable possibility of recovery." *Bates Fabrics*, 590 A.2d at 531. By focusing on Dr. Ricci's report, which suggests that the allegedly defamatory statements are true, the court was approaching the overall merits of the litigation that should be left for trial. *Northeast Investment Co.*, 351 A.2d at 852. The court failed to apply the correct legal standard for approval of an attachment.

### III.

██ The defendants also contend that trustee process is inappropriate when the claim of intentional infliction of emotional distress is based solely upon slanderous statements. We disagree. Trustee process, unknown at common law, was created by statute. *Davis v. United States Bobbin & Shuttle Co.*, 118 Me. 285, 286, 107 A. 865, 865 (Me.1919). Both M.R.Civ.P. 4B(a) and 14 M.R.S.A. § 2601 allow the use of trustee process in any personal action, "except actions only for specific recovery of goods and chattels, for malicious prosecution, for slander by writing or speaking, or for assault and battery." Maine commentators have concluded, therefore, that "[t]rustee process can be used in any action where relief is sought other than of the excepted variety." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4B.2 at 136 (2d ed. 1970). Joining a defamation claim with a claim of intentional infliction of emotional distress does not prevent the use of trustee process on the nonexcepted claim. *Id.; but see Buono v. Nardella*, 344 Mass. 257, 258–59, 182 N.E.2d 142, 143–44 (1962). Moreover, trustee process is proper even though the emotional distress was caused by slanderous statements, because the two torts alleged in this case are separate and distinct. *See Ames v. Adams*, 128 Me. 174,

146 A. 257 (1929) (trustee process should have been granted on wrongful death claim despite fact that death was caused by assault and battery).

██ Attachment requires specific facts to support a claim for recovery and "evidence 'from which some informed projection [can] be made' as to the amount of damages suffered by the party." *Bates Fabrics*, 590 A.2d at 531 (quoting *Bowman*, 425 A.2d at 1329). In the present case, the Calverts seek attachment against the defendants' property for $50,000 on the defamation claim. We recently found that a jury award of $50,000 as compensatory damages for false allegations of child abuse was not clearly excessive because such statements are "actionable per se" and no special damages need to be proved. *Ramirez v. Rogers*, 540 A.2d 475 (Me.1988). The statements made in the present case impute the crime of physically and sexually abusing a child which, if found untrue, would not require the proof of special damages. In these circumstances, the likelihood of recovering $50,000 is reasonable. There is also a reasonable likelihood that the Calverts will recover $10,000 on the claim of intentional infliction of emotional distress. The Calvert affidavits point to continuing medical bills for psychiatric counselling in the amount of $1200 as of January 2, 1991, and $800 in lost tuition resulting from Shannon Calvert's dropping out of the University of Southern Maine because of this incident. We, therefore, vacate the judgment and remand for entry of an order approving attachment against defendants' property in amount of $50,000 and attachment on trustee process for $10,000.

The entry is:

Judgment vacated.

Remanded with direction to approve the attachment of $50,000 and trustee process of $10,000.

All concurring.