# TRANS COASTAL CORPORATION

*v.*

## Brian CURTIS.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 1, 1993.
Decided April 12, 1993.

Sidney H. Geller, Waterville, for plaintiff.

David A. King, Therriault & King, Bath, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

██ Defendant Brian Curtis appeals from the denial in the Superior Court (Kennebec County, *Alexander, J.*) of his motion to dissolve an *ex parte* attachment[1] issued in favor of plaintiff Trans Coastal Corporation. We agree with Curtis's contention that the affidavit submitted by Trans Coastal provides an insufficient basis to support the attachment under the applicable preponderance of the evidence standard, and we vacate the attachment.

Curtis became employed by Trans Coastal, a trucking firm, as a spare driver in December 1990, and became a full-time driver in January of 1991. In June 1991, Trans Coastal altered the way that it procured driving services. Pursuant to this new arrangement, Curtis entered into a permanent lease agreement with Trans Coastal under which Curtis was entitled to use, and assumed operating expenses for, a Peterbilt tractor owned by Trans Coastal in order to perform transportation services for them. Apparently in response to the subsequent complaints of Curtis that under the new arrangement he was not making enough money to meet his expenses, on March 4, 1992, the parties entered into a lease-purchase agreement to replace the permanent lease agreement. Under the lease-purchase agreement, Curtis was to purchase the Peterbilt tractor over a period of time for $61,459.54. Curtis's first payment pursuant to the lease-purchase agreement was due on April 19, 1992.

On April 16, 1992, Trans Coastal filed the complaint in this case, along with a motion for attachment. The complaint alleges that

---

1. Both an attachment order and the denial of a motion to dissolve an attachment are immediately appealable as exceptions to the final judgment rule. *Bay of Naples Condominium Ass'n v. Lewis,* 582 A.2d 1210, 1211 (Me.1990). Our re-view of the denial of a motion to dissolve an attachment is the same as the review of an order granting an attachment. *See Casco Northern Bank, N.A. v. New England Sales, Inc.,* 573 A.2d 795, 797 (Me.1990).

Curtis breached both contracts with Trans Coastal and claims $1457.10 due under the permanent lease agreement, and $61,459.54 due in connection with the lease-purchase agreement. On April 17, 1992, the Superior Court (*Delahanty, C.J.*) ordered an *ex parte* attachment of the tractor in the amount of $62,916.64. Curtis's appeal to this court was filed after his motion to dissolve the *ex parte* order was denied. *See* M.R.Civ.P. 4A(g).

 Curtis contends that the court erred in denying his motion to dissolve because Trans Coastal's affidavit is insufficient to support the attachment order.[2] The denial of a motion to dissolve an attachment is reviewed for clear error or abuse of discretion. *Beesley v. Landmark Realty, Inc.*, 464 A.2d 936, 937 (Me.1983). The rule governing attachments was amended effective February 15, 1992, making the amended rule applicable to Trans Coastal's motion for attachment in this case. *See Emerson v. County Concrete & Constr. Co.*, 614 A.2d 549, 550 (Me.1992). Pursuant to the amended rule, an attachment may be ordered only if the court finds that it is "more likely than not that the plaintiff will recover judgment in an amount equal or greater than the aggregate sum of the attachment." M.R.Civ.P. 4A(c), (g).[3] Thus, before an attachment may be ordered, the court must find by a preponderance of the evidence that the

moving party will succeed on its claim and in an amount equal to or greater than the amount of the attachment sought. *Jacques v. Brown*, 609 A.2d 290, 292 n. 3 (Me.1992). Curtis's motion to dissolve the *ex parte* attachment is treated as the equivalent of a contested motion for attachment after notice, with Trans Coastal as the party seeking the attachment having the burden of establishing by a preponderance of the evidence its entitlement to recovery of an amount equal to or greater than the amount of the attachment. *Casco Northern Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 (Me.1990); M.R.Civ.P. 4A(h).

 Trans Coastal's supporting affidavit of its president, Raymond Veilleux, alleges three instances of breach of the permanent lease agreement: (1) that Curtis refused to transport loads for Trans Coastal; (2) that Curtis had the truck serviced by an unauthorized service station in California; and (3) that Curtis accepted loads from other carriers not approved by Trans Coastal. The affidavit does not specify when Curtis may have refused loads and does not reveal the date or identity of the loads allegedly accepted from unauthorized carriers. In view of the responding affidavit filed by Curtis, stating that he did not refuse loads from Trans Coastal and accepted no loads from other carriers prior to April 18, 1992,

2. This case is complicated by the fact that Trans Coastal sought an attachment rather than a writ of replevin for repossession of the tractor. Under the lease-purchase agreement, title to the tractor remains with Trans Coastal; therefore an attachment of Trans Coastal's own property would be ineffective to satisfy a judgment against Curtis.

 Although the procedures for obtaining a writ of replevin are substantially similar to those for obtaining an attachment, they differ in two material aspects: (1) the required evidentiary showing on the underlying substantive claim for obtaining a writ of replevin had not been amended at the time of the hearing and was the lower "reasonably likely" standard, and (2) the party seeking a writ of replevin must post a replevin bond equal to twice the value of the property for the protection of the opposing party. M.R.Civ.P. 4A, 64. In addition, there is a critical theoretical distinction between the issuance of an attachment to secure a potential judgment and an action in replevin to recover possession of property. The writ of replevin

focuses on the disputed right to possession and provides the additional safeguard of a bond, while the attachment proceeding focuses on the underlying dispute, merely providing a source for the collection of a potential judgment. In this case, the critical issue appears to be the right to the possession of the tractor pending the outcome of the dispute, making replevin the more appropriate remedy.

3. Prior to the amendment, the rule provided that an attachment or trustee process could be ordered only on a finding by the court "that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment...." M.R.Civ.P. 4A(c), (g) & 4B(c), (i). The reasonable likelihood standard could be met by a showing of a reasonable possibility of success, a low threshold. *Casco Northern Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 & n. 4 (Me.1990).

the general unsubstantiated allegations of Trans Coastal, without more, are inadequate to establish grounds for an attachment under a preponderance of the evidence standard. *See Atlantic Heating Co., Inc. v. Lavin,* 572 A.2d 478, 479 (Me. 1990); *Bowman v. Dussault,* 425 A.2d 1325, 1329–30 (Me.1981) (affidavits lacking specific facts inadequate to support attachment).

■ The remaining allegation that the truck was serviced by an unauthorized service station, although alleging a breach of a provision of the agreement, specifies no damages resulting from the unauthorized service. Without more, the breach alleged is insubstantial and does not satisfy Trans Coastal's burden to establish by a preponderance of the evidence its entitlement to recover damages against Curtis for a breach of the permanent lease agreement.

■ Nor does Trans Coastal provide sufficient affidavit evidence to support a finding by a preponderance of the evidence that Curtis breached the lease-purchase agreement entitling Trans Coastal to an attachment on the tractor. The date of Veilleux's affidavit, April 16, is prior to the date that Curtis's first payment was due. The affidavit asserts that Curtis failed to make the tractor available for inspection and has hauled loads for unauthorized carriers. The lease-purchase agreement, however, does not by its terms require that Curtis obtain authorization to haul loads for other carriers, and merely requires Curtis to provide for the inspection of the vehicle "on a regular basis." Because, according to Curtis's affidavit, the vehicle was inspected on March 20, 1992, Trans Coastal has failed to establish a substantial breach of the lease-purchase agreement. Moreover, even if a breach of the lease-purchase agreement were sufficiently established by a preponderance of the evidence, Trans Coastal's remedy is to repossess and resell the tractor, recovering any deficiency from Curtis. *See C.I.T. Corp. v. Haynes,* 161 Me. 353, 212 A.2d 436, 437 (1965) (seller's remedy for breach of conditional sales contract); 11 M.R.S.A. §§ 9–503, 9–504 (1964 & Supp.1992). Therefore

an attachment in the amount of the full purchase price of the vehicle is not warranted on this record.

The entry is:

Attachment vacated. Remanded to the Superior Court for entry of an order denying the attachment.

All concurring.