**SVENSKA ORTMEDICINSKA INSTITUTET, AB and Georg Wikman, Plaintiffs**

v.

**Richard DESOTO, Antonia Desoto, Bayberry Realty Trust, Swedish Herbal Institute, Ltd., Swedish Herbal Institute, Swedish Herbal Institute, Ltd., and Shi Venture Corp., Defendants**

No. CIV. 00–368–P–C.

United States District Court, D. Maine.

April 9, 2001.

Samuel Sherry, Esq., Metropolitan Legal Center, PA, Portland, ME, Norman A. Abood, Esq., Toledo, OH, for Svenska Ortmedicinska Institutet AB, Georg Wikman, plaintiffs.

James B. Bartlett, James B. Bartlett, P.A., York, ME, for Richard Desoto, Swedish Herbal Institute Ltd. Maine Corporation, Swedish Herbal Institute, LLC, Swedish Herbal Institute, Ltd New York Corporation, Shi Venture Corp, defendants.

## MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR ATTACHMENT AND ATTACHMENT ON TRUSTEE PROCESS

GENE CARTER, District Judge.

Plaintiffs Svenska Ortmedicinska Institutet, AB ("Svenska") and Georg Wikman ("Wikman") have filed a twelve-count Second Amended Verified Complaint asserting claims against Defendants Richard DeSoto, Antonia DeSoto, Bayberry Realty Trust, Swedish Herbal Institute, Ltd., Swedish Herbal Institute, Swedish Herbal

Institute, Ltd.,[1] and SHI Venture Corp. (collectively "corporate Defendants" or "SHI Defendants") for Breach of Express Contract (Count I); Breach of Implied Contract (Count II); Recovery in Quasi–Contract (Count III); Fraud (Count IV); Collection on Promissory Note (Count V); Unjust Enrichment (Count VI); Misappropriation and Conversion (Count VII); Alter Ego (Count VIII); Bad Check (Count IX); Fraudulent Transfer, 14 M.R.S.A. § 3575 (Count X); Fraudulent Transfer, 14 M.R.S.A. § 3576(1) (Count XI); and violation of the Uniform Deceptive Trade Practices Act, 10 M.R.S.A. § 1211 *et seq.* (Count XII). The Court has previously ordered the parties to arbitrate Counts I through IX and Count XII and has stayed Counts X and XI pending arbitration. See Memorandum of Decision and Order Denying Defendants' Motion to Dismiss (Docket No. 15). Now before the Court are Plaintiffs' Motions for Preliminary Injunction (Docket No. 2) and for Attachment and Attachment on Trustee Process (Docket No. 3). For the reasons that follow, the Court will deny Plaintiffs' motions.

The Second Amended Verified Complaint makes the following relevant factual assertions. Plaintiff Svenska is a Swedish corporation involved in the research, development, and sale of herbal extracts. Wikman is Svenska's principal owner. Richard DeSoto is principal owner of the four Defendant corporate entities bearing like names—Swedish Herbal Institute, Ltd., Swedish Herbal Institute, Swedish Herbal Institute, Ltd., and SHI Venture Corp. Between 1993 and 1998, Defendant Richard DeSoto and various of the Defendant corporate entities entered into four agreements with Plaintiffs relating to the licensing and distribution of Plaintiffs' herbal extracts. The contracts relevant to the claims made in this suit were all signed by Wikman on behalf of Svenska and by Richard DeSoto on behalf of the corporate Defendants. See Second Amended Verified Complaint Exs. A, B, C, D. Working through the four corporate Defendants, Defendant Richard DeSoto obtained herbal products and loans from Svenska. Richard DeSoto also signed a promissory note on behalf of the corporate Defendants providing for the repayment of the Svenska loans totaling $260,054. Defendants currently owe Plaintiffs more than $600,000 for unpaid product and on the promissory note.

In June 2000, Richard DeSoto and his corporate entities prepared and presented a fraudulent purchase order in an attempt to induce Svenska to provide them with enough herbal products to sustain their operation for approximately a year. Richard DeSoto's corporate entities provided a $20,000 down payment check, and subsequently stopped payment on the check. Among the other allegations in the Second Amended Verified Complaint, Plaintiff asserts that in January 1996, Richard DeSoto and his wife, Antonia DeSoto, fraudulently conveyed their residence to the Bayberry Realty Trust in an effort to remove assets from the reach of their creditors including Svenska.

## II. DISCUSSION

### A. Preliminary Injunction

Plaintiffs move to enjoin Defendants Richard DeSoto and the SHI corporate Defendants from "alienating, selling, advertising or otherwise distributing Svens-

1. From Plaintiffs' Amended Complaint, the Court understands the distinction between the two identically named Swedish Herbal Institute, Ltd. entities to be that one entity is incorporated under the laws of New York and the other entity is incorporated under the laws of Maine.

ka's products." Motion for Preliminary Injunction at 1. Plaintiffs assert, "Defendants' continuing sales of such items cause the Plaintiff to compete in the marketplace with its own product, in violation of the parties' agreements." *Id.* at 8. Defendants respond that Plaintiffs fail to meet their burden for injunctive relief.

■ The standard for obtaining a preliminary injunction is familiar. The court is required to weigh four factors: (1) whether the plaintiff has shown a likelihood of success on the merits; (2) whether the plaintiff has established an imminent threat of irreparable harm in the absence of a preliminary injunction; (3) whether the balance of hardships tilts in plaintiff's favor; and (4) the effect of the proposed injunction on the public interest. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996); *Equal Employment Opportunity Comm'n v. Astra USA, Inc.,* 94 F.3d 738, 742 (1st Cir.1996). The burden of proof is on the plaintiff. The First Circuit has described likelihood of success as "the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 674 (1st Cir.1998). *See also Gately v. Commonwealth of Mass.,* 2 F.3d 1221, 1225 (1st Cir.1993)(likelihood of success on the merits is the *sine qua non* for obtaining a preliminary injunction); *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993). If plaintiff makes a great showing of likely success on the merits, a reduced showing of irreparable harm may be appropriate. *See Ross–Simons,* 102 F.3d at 19; *Astra,* 94 F.3d at 743. However, there is no irreparable harm where the law provides an adequate remedy. *See Interco, Inc. v. First National Bank of Boston,* 560 F.2d 480, 485–86 (1st Cir.1977). After reviewing the written submissions of the parties, the Court finds that Plaintiffs have failed to show a likelihood of success on any of

their claims for which an injunction is appropriate relief or that they will suffer irreparable harm if this Court does not act.

■ Plaintiffs do not argue that they are likely to succeed on any specific claim in their twelve-count Second Amended Verified Complaint. Rather they summarily state:

The extensive record which the Plaintiffs have submitted spell[s] out the fashion in which they meet and exceed this standard. The Defendants have used similarly-named business entities to play a shell-game, and have strung the Plaintiffs along almost to the point of no return. In the process, the Defendants have also endangered Svenska's business through their abuse of Svenska's trade-dress. This record shows that the Plaintiffs' case is all but overwhelming—there can be no doubt that the case exceeds the minimum requirements for issuance of injunctive relief here.

Motion for Preliminary Injunction at 8. Although Plaintiffs base their likelihood of success argument on their complaint as a whole, the Court need only consider Plaintiffs likelihood of success on the claims that support the requested injunctive relief—Counts I, II, III, and IV. With respect to the claims for breach of contract (Counts I, II, and III), Plaintiffs make conclusory allegations that there is a substantial likelihood that they will prevail, but they fail to point to the breach of any specific contractual provision. The Court will not speculate about which of the contractual provisions in the four agreements Plaintiff alleges have been breached.

■ Although Plaintiffs make numerous breach claims in their complaint, the Court specifically addresses the unauthorized logo use claim regarding because Plaintiffs rely on this claim as a basis for their irreparable harm argument. Plaintiffs al-

lege in the Second Amended Verified Complaint that Defendants are unlawfully using the logo of the Medical Products Agency of Sweden, described by Plaintiffs as the "Swedish FDA," on product packaging, on its website, or for marketing products generally. The Second Amended Verified Complaint relies on the affidavit of Trica A. Spinney to support the claim that Defendants are using the Medical Products Agency of Sweden logo. Affidavit of Trica A. Spinney (Docket No. 4). The affidavit states that Ms. Spinney purchased products from SHI on the Internet, but includes nothing about the use of any logos or seals. *Id.* Plaintiffs have failed to show that Defendants are using the Swedish FDA seal in marketing its products and, thus, are not likely to succeed on this breach claim.

■ Likewise, Plaintiffs fail to meet their burden for establishing likelihood of success on their fraud claim—Count IV. Specifically, Plaintiffs assert that Defendants sent them a fraudulent purchase order from the Mollen Clinic. Plaintiffs have not submitted any admissible evidence necessary to support their fraud claim. All that Plaintiffs have submitted in support of this claim is an unattested letter from a doctor associated with the Mollen Clinic wherein he states that the purchase order from the clinic is a forgery. Nor have Plaintiffs cited any legal authority in support of the proposition that fraud is established without showing reliance on the fraudulent document, and the Second Amended Verified Complaint does not allege that the fraudulent purchase order induced Plaintiff to ship the product to any of the Defendants. The Court finds that Plaintiffs' conclusory allegations, without evidentiary support or citation to legal authority, fail to show that they are likely to succeed on their fraud claim.

■ While Plaintiffs have failed to show any likelihood of success, the Court will nevertheless consider the irreparable harm prong. Plaintiffs contend that they are suffering from two types of irreparable harm. First, Plaintiffs assert that they have demonstrated that "Defendants are advertising and distributing Svenska's product using packaging and material which bears the seal of the Swedish FDA" which is "essentially illegal" and "invites the U.S. FDA regulation of Svenska's product line." Plaintiffs' Motion for Preliminary Injunction at 6. The irreparable harm, Plaintiffs argue, results from the expensive and time-consuming U.S. Food and Drug Administration ("U.S.FDA") approval process that would effectively remove Svenska from the U.S. market until U.S. FDA approval is obtained. *Id.* The asserted basis for irreparable harm is not sufficient to warrant issuance of an injunction because there is an appropriate remedy at law, namely monetary damages.

■ The second asserted basis of irreparable harm is that Defendants' conduct presents a negative image for Svenska's products in the marketplace. Plaintiffs' Motion for Preliminary Injunction at 6–7. In support of this claim, Plaintiffs' point to the fraudulent purchase order from the Mollen Clinic. This alone does not convince the Court of the probability of irreparable harm. Moreover, as stated above, Plaintiffs have not met their burden of establishing a likelihood of success on this claim and it is axiomatic that Plaintiffs need to show that irreparable harm results from a claim upon which they are likely to prevail.

Plaintiffs having failed to establish any likelihood of success or irreparable harm, the Court will not address the two remaining elements for issuing injunctive relief.

## B. Standard for Attachment and Attachment on Trustee Process

The party moving prejudgment to attach must comply with the requirements of M.R. Civ. P. 4A or M.R. Civ. P. 4B made applicable by Fed.R.Civ.P. 64 and Local Rule 64. M.R. Civ. P. 4A and 4B allow for attachment and trustee process of property if "such attachment [is] for a specified amount" and if there is "a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment ... in an amount equal to or greater than the amount of the attachment." Attachment is available on real estate, goods and chattels, and other property to satisfy any judgment recovered by the plaintiff. *See* M.R. Civ. P. 4A. To be entitled to attachment and trustee process, "[a] moving party must show a greater than 50 percent chance of prevailing." *Liberty v. Liberty,* 2001 Me. 19, ¶ 12 fn. 4, 2001 WL 69432 (quoting M.R. Civ. P. 4A Advisory Committee's note at XCII). The Law Court has previously stated that the rules governing prejudgment attachment are "quite liberal" and that the "reasonable likelihood standards of Rules 4A and 4B do not require the trial court to decide whether 'it is more likely than not that [a party] will prevail' but only 'whether the underlying claim is substantial enough that there appears to be a reasonable possibility of recovery.'" *Bates Fabrics Inc. v. LeVeen,* 590 A.2d 528, 530 and 531 (quoting *Bowman v. Dussault,* 425 A.2d 1325, 1328 (Me.1981)); *see also Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* 351 A.2d 845, 852 (Me. 1976). Attachment does require specific facts to support a claim for recovery and "evidence 'from which some informed projection [can] be made' as to the amount of damages suffered by the party." *Bates Fabrics,* 590 A.2d at 531 (quoting *Bowman,* 425 A.2d at 1329).

Plaintiffs move for attachment against the real and personal property of Defendants and for attachment on trustee process against the real property of the Bayberry Realty Trust in the amount of $612,842. The Court will first consider Plaintiffs' motion for attachment against the real and personal property of Defendants Richard DeSoto and the corporate entities. Plaintiffs' motion requesting attachment and the memorandum in support thereof do not specify on which counts Plaintiffs are more likely than not to prove their case. Defendants respond that Plaintiffs fail to meet their burden for attachment on any of their claims. The Court will consider whether attachment is appropriate on any of Plaintiffs twelve counts.

The Court will first consider Counts IV, VI, VII, VIII, X, XI, and XII. With regard to these counts, the Court finds that Plaintiffs have failed to set forth the requisite specific facts or evidentiary support. In this case, Plaintiffs not only fail to support their request for attachment under Counts IV, VI, VII, VIII, X, XI, and XII with facts that would permit the Court to determine an appropriate amount for attachment, they fail to even allege an amount of recovery under any of these counts in their Second Amended Verified Complaint.

For the breach of contract claims, Counts I, II and III, Plaintiffs' seek damages in the amount of $612,842, which they claim represents the sum of the balance due for goods shipped and the balance due on a promissory note. Second Amended Verified Complaint ¶¶ 68(B), 78(B), and 84(B). In order to establish the amount owed on goods shipped, Plaintiffs rely upon a summary of accounts prepared by an auditor of Ernst and Young. *See* Second Amended Verified Complaint Ex.

H. The Court will not consider the auditor's letter because, in the form submitted, it does not meet the requirements of a Rule 4A(i) affidavit. Without an affidavit, the audit summary alone is insufficient to support a showing that Plaintiffs could recover a certain amount of damages from Defendants on their claims of breach of contract. In addition, Plaintiffs have failed to allege the specific provision or provisions on which the Court could determine that Defendants are in default. Without an admissible affidavit accompanying the accounting statement and evidence of specific contractual provisions regarding payment for goods, Plaintiffs are unable to meet their burden of proving likelihood of recovery or the amount that they may be entitled to recover for the goods delivered under Counts I, II, and III. Plaintiffs' general, unsupported allegations of liability on the part of the Defendants for breach of a contract are inadequate to establish grounds for attachment and trustee process under a preponderance of the evidence standard. *See Trans Coastal Corp. v. Curtis*, 622 A.2d 1186, 1189 (Me.1993).

With regard to Count V, breach of a promissory note, Plaintiffs allege that Defendant Richard DeSoto agreed, as President of Swedish Herbal Institute, Ltd., to repay two loans from Svenska totaling $260,054 at a rate of $3,000 per month. *See* Second Amended Verified Complaint Ex. E. After failing to make certain payments of principal and interest under the note, Plaintiffs made a demand for payment of the promissory note. *See* Second Amended Verified Complaint ¶¶ 100–102. Plaintiffs contend that Defendants owe them $179,054 on those loans. Second Amended Verified Complaint ¶ 104. In support of this claim, Plaintiffs have attached a copy of the promissory note to the complaint. *See* Second Amended Verified Complaint Ex. E. Defendant Richard DeSoto admits that he entered into the promissory note with Svenska, but disputes that the promissory note includes interest payments. *See* Affidavit of Richard DeSoto (Docket No. 14) ¶¶ 11–12. Richard DeSoto also admits that he stopped making payments on this note in June 2000 because Plaintiff stopped shipping all herbal extracts to SHI–Maine. *See* Affidavit of Richard DeSoto ¶ 12. The undated promissory note does not include any provision for interest, the terms of the note, or any default provision. Under these circumstances, Plaintiffs are unable to meet their burden of proving likelihood of recovery or the amount that they may be entitled to recover for such default.

In Count IX, Plaintiffs assert a claim for $50 and costs associated with the return of a bad check. Without considering the merits of this claim, the Court concludes that it would be inappropriate to grant attachment on a sum of this size.

The Court now turns to Plaintiffs' Motion for Attachment On Trustee Process. Trustee process is considered a form of attachment that places a lien on the defendant's property in the hands of a trustee. 1 Field, McKusick & Wroth, MAINE CIVIL PRACTICE § 4B.1 at 134–35 (1970); *Smith v. Davis*, 131 Me. 9, 12, 158 A. 359, 361 (1932). Again, Plaintiffs do not specify the counts on which they base this motion. The only claims to which the Plaintiffs' request for trustee process could possibly apply are Counts X and XI wherein it is asserted that Defendants Richard and Antonia DeSoto conveyed their home to the Bayberry Realty Trust in order to avoid creditors, including Svenska. *See* Second Amended Verified Complaint ¶¶ 139–156. The allegations made in these Counts are stated as legal conclusions without any evidentiary support. As such, Plaintiffs are unable to

meet their burden of proving the likelihood of recovery or the amount that they may be entitled to recover for such default.

### III.  CONCLUSION

Accordingly, the Court **ORDERS** that Plaintiffs' Motion for Preliminary Injunction be, and it is hereby, **DENIED** and that Plaintiffs' Motion for Attachment and Attachment on Trustee Process be, and it is hereby, **DENIED.**