DONNA DISEND vs. MEADOWBROOK SCHOOL.

No. 91-P-908.

Norfolk. October 14, 1992. - December 8, 1992.

Present: DREBEN, KASS, & GREENBERG, JJ.

*Libel and Slander.*

A teacher's libel action against the private school that had employed her
was improperly dismissed under Mass.R.Civ.P. 12(b)(6) for failure to
state a claim on which relief could be granted, where the allegedly
libelous communication, a letter from the headmaster of the school ad-
dressed to the parents of the plaintiff's pupils, could reasonably be un-
derstood as a report of fact that the plaintiff had been involved in an
incident so detrimental to the pupils that it required immediate termi-
nation of her employment. [674-677].
A libel action was not subject to dismissal under Mass.R.Civ.P. 12 (b)(6)
on the defendant's assertion of its conditional privilege as an employer,
where the complaint alleged that the defamatory statement was false
and malicious. [677].

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 13, 1990.

The case was heard by *Roger J. Donahue,* J., on a motion
to dismiss.

*Evan T. Lawson* for the plaintiff.
*Karen A. Ecker* for the defendant.

KASS, J. On the ground that the allegedly libelous docu-
ment was, on its face, devoid of defamatory content, a Supe-
rior Court judge dismissed the complaint in this case for fail-
ure to state a claim for which relief can be granted. See
Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). The plaintiff
Donna Disend has appealed. We think the words complained
of can reasonably be understood in a defamatory sense and,
therefore, reverse the judgment of dismissal.

Although three purportedly injurious letters were attached
to the complaint, the libelous sting is arguably present only

(as the plaintiff has conceded on appeal) in the letter dated March 26, 1990, which was sequentially the first of the three. In its entirety, that letter, written by the headmaster of the defendant Meadowbrook School, read as follows:

"Dear Parents of Fourth Grade Students,

> Recently an incident involving Donna Disend was brought to the attention of the Board of Trustees. The Executive Committee reviewed the specifics of the situation and agreed with my recommendation to terminate Mrs. Disend's contract for the remainder of the year.

> Within an hour after Mrs. Disend was asked to leave, she and her husband went into the fourth grade classroom without my permission. Mrs. Disend was inappropriate in the way she dealt with the children.

> Please join me this evening at 8:00 P.M. in the Fourth Grade classroom so that I may explain the situation to you and plan appropriate ways to help our children through this transition."

We are to ask ourselves whether those words, may reasonably be read as discrediting Disend in the minds of any considerable and respectable class of the community. *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 143-145 (1974). *Smith* v. *Suburban Restaurants, Inc.*, 374 Mass. 528, 529 (1978). *Tartaglia* v. *Townsend*, 19 Mass. App. Ct. 693, 696 (1985). There are in the headmaster's letter no words such as "dishonest," "diseased," "insane," or "bankrupt," any of which, if false, quite obviously denigrate the person so described. Words not inherently disparaging may, however, have that effect if viewed contextually, i.e., in the light of attendant circumstances. *Sharratt* v. *Housing Innovations, Inc., supra* at 145 (in factual context, failure to mention the plaintiff at all permitted the innuendo that he had been dismissed as architect on a particular project). *Smith* v. *Suburban Restaurants, Inc., supra* at 529-530 (letter that the plaintiff, because of her actions, was no longer welcome at the defendant restaurant was susceptible of disparaging in-

terpretation). Compare *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 11 (1989) (reader could not reasonably infer from context that newspaper was accusing plaintiff of assaulting a police officer). See Restatement (Second) of Torts § 563 comment d and e (1977).

As to the letter of the headmaster complained of, it does not require a fevered imagination to think that an "incident" brought to the attention of the school trustees, the "specifics" of which warranted a teacher's immediate dismissal before the end of the academic year must have involved misconduct of an egregious sort. The complaint is pointed in claiming that the innuendo of professional misconduct damaged Disend's reputation and her ability to earn a living as a teacher. Adding to the impression of grievous professional — or worse — misconduct is the sentence in the same letter that "Mrs. Disend was inappropriate in the way she dealt with the children." As contextual facts are developed, it may turn out that the suggestive words and phrases are innocent, but at the pleading stage the allegations of the plaintiff are to be read indulgently in the sense that the complaint may stand unless, on the face of the complaint, it is unmistakeable that the plaintiff can prove no facts in support of a tenable legal claim. *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). *Connerty* v. *Metropolitan Dist. Commn.*, 398 Mass. 140, 143 (1986). *New England Insulation Co.* v. *General Dynamics Corp.*, 26 Mass. App. Ct. 28, 29-30 (1988). Contrast *Tropeano* v. *Atlantic Monthly Co.*, 379 Mass. 745, 751 (1980).

As an alternate barrier to maintenance of Disend's action, the school argues that the headmaster's letter is no more than an expression of opinion, hence incapable of interpretation in a defamatory sense. See *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 338-341 (1980); *Pritsker* v. *Brudnoy*, 389 Mass. 776, 778-783 (1983); *Aldoupolis* v. *Globe Newspaper Co.*, 398 Mass. 731 733-735 (1986); Restatement (Second) of Torts § 566. In those cases the medium in which the speech or writing occurred — respectively a magazine, a radio talk show, and a newspaper "op-ed" piece — and the subjects considered, implied commentary rather than the

statement of objective facts. The letter from the headmaster of the Meadowbrook School, in contrast, was not an exercise in commentary but a communication in the nature of a report of fact that Disend was involved in an incident so detrimental to the school children that it required prompt and drastic action. The import of the letter implied the existence of other undisclosed facts which, concerning the plaintiff, were discrediting and, hence, potentially defamatory. Cf. Restatement (Second) of Torts § 566. The headmaster's letter is in that regard distinguishable from assessments of the calibre of the plaintiff's reporting abilities in *Cole* v. *Westinghouse Bdcst. Co.*, 386 Mass. 303, 313 (1982), a case also colored by the public figure status of the plaintiff.

As a last line of defense, Meadowbrook School invokes the conditional privilege which an employer possesses to disclose disparaging information about an employee in furtherance of the reasonable business objectives of the employer. See *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 94 (1987); *Dexter's Hearthside Restaurant, Inc.* v. *Whitehall Co.*, 24 Mass. App. Ct. 217, 222-223 (1987); *Goldhor* v. *Hampshire College*, 25 Mass. App. Ct. 716, 724 (1988) (an opinion which makes the point that an announcement of termination of employment does not in and of itself have defamatory connotations).

At a later stage of the instant case, the privilege defense may, indeed, be decisive, i.e., that the facts are that the school had a basis founded in the operation of its enterprise for discharging Disend and for notifying the parents of her pupils. It is not possible to arrive at that conclusion, however, on the basis of the complaint. The complaint negates the lawful exercise of a conditional privilege by alleging that what the school had said about Disend was false and malicious. More facts need to be developed, on a motion for summary judgment or at trial, before a court may know whether the school has lawfully exercised a conditonal privilege.

*Judgment reversed.*