# United States Court of Appeals
## For the First Circuit

_____

No. 02-1023

STEPHEN M. MOSS,

Plaintiff, Appellant,

v.

CAMP PEMIGEWASSETT, INC.; ROBERT L. GRABILL;
ALFRED N. FAUVER; BERTHA H. FAUVER;
JONATHAN G. FAUVER; THOMAS L. REED;
BETSY M. REED; THOMAS L. REED, JR.,
Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

_____

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,* Senior District Judge.

_____

Robert R. Lucic on brief for appellant.
Russell F. Hilliard, with whom Lauren S. Irwin appears on
brief, for appellees.

_____

November 26, 2002

_____

_____

*The Honorable William W Schwarzer, Senior United States
District Judge for the Northern District of California, sitting by
designation.

**SCHWARZER, Senior District Judge.** Stephen Moss, a former archery counselor at Camp Pemigewasset, a summer camp for boys ("the Camp"), claims that he was defamed by the Camp's director, Robert Grabill. The gravamen of the complaint is that Grabill stated to an assistant counselor that he had received a complaint regarding Moss through the State of New Hampshire concerning inappropriate contact with boys at the Camp-an admittedly false statement-as well as two complaints from Camp parents. Moss brings this claim for defamation, along with claims for intentional infliction of emotional distress, tortious interference with prospective contractual rights, and civil conspiracy, against Grabill and the Camp's board of directors. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The question before us is whether Moss sufficiently alleged a claim upon which relief can be granted.

## FACTUAL BACKGROUND

In ruling on a motion to dismiss, a court must "accept all well-pleaded facts of the complaint as true and draw all reasonable inferences in favor of the plaintiff." Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997). Moss served as the Camp's Head of Archery during the summers of 1999 and 2000. In October 2000, Moss received a letter from Grabill informing him

---

[1]Moss did not seek leave to amend the complaint. See Fed. R. Civ. P. 15(a).

that his employment would not be renewed for the summer of 2001. No reason for the decision was given, and Moss had no prior indication of dissatisfaction with his efforts. Grabill later told Moss that he had received three complaints against him alleging inappropriate contact with boys at the Camp. Two of the complaints were made by parents directly to the Camp ("the Camp complaints"); a third complaint came "through the State of New Hampshire" ("the State complaint"). Grabill refused to provide any detail regarding the identity of the complainants and only disclosed some "purported partial details" of one complaint.

Grabill later told Charles Donovan, the Camp's Assistant Head of Nature and Bunk Counselor, of the complaints against Moss, stating that one came "through 'the State of New Hampshire.'" Grabill also told Donovan that "he was concerned something like this would happen again and that the existence of three known allegations automatically implied the existence of numerous other unreported ones." Despite Moss's requests for specific details, none were provided. Moss also requested his personnel file from the Camp pursuant to New Hampshire Revised Statutes Annotated § 275:56I, but did not receive it or any documentation of any complaint against him.

On April 4, 2001, Thomas L. Reed, Sr., a member of the Camp's board of directors, wrote to Moss that "Grabill's statement that he had received a complaint about Moss from 'the State of New

Hampshire' was false."  Reed informed Moss that "your name has never been mentioned to the State by Rob [Grabill], nor do we know of any parent, camper, or anyone else involved with [Camp] Pemi who has contacted the State in any way involving you."  Despite the acknowledged falsity of Grabill's statement about the state complaint, the board of directors ratified Grabill's decision and refused Moss's request for reinstatement for 2001.

This action followed. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

**STANDARD OF REVIEW**

We review the district court's judgment of dismissal <u>de novo</u>.  <u>Wagner</u> v. <u>Devine</u>, 122 F.3d 53, 55 (1st Cir. 1997).  "We may affirm a dismissal for failure to state a claim only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory."  <u>Id.</u>  The district court's determination of whether a statement is capable of defamatory meaning is a question of law reviewed <u>de</u> <u>novo</u>.  <u>Gray</u> v. <u>St. Martin's Press</u>, 221 F.3d 243, 250 (1st Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1075 (2001).

**DISCUSSION**

**I. THE DEFAMATION CLAIM**

Well-settled principles govern our disposition of this appeal. The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is

entitled to offer evidence in support of his claims. <u>Scheuer</u> v. <u>Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds</u>, <u>Davis</u> v. <u>Scherer</u>, 468 U.S. 183 (1984). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>accord</u> <u>Cooperman</u> v. <u>Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).

Because this case arises under our diversity jurisdiction, we look to New Hampshire's substantive law of defamation in applying these principles. Under that law, "[t]o establish defamation, there must be evidence that a defendant . . . publish[ed] . . . a false and defamatory statement of fact about the plaintiff to a third party." <u>Independent Mech. Contractors, Inc.</u> v. <u>Gordon T. Burke & Sons, Inc.</u>, 635 A.2d 487, 492 (N.H. 1993) (citing Restatement (Second) of Torts § 558 (1977)). Moss's complaint alleges two statements published by Grabill to Donovan are defamatory: (1) that Grabill "had received three complaints regarding Moss concerning inappropriate contact with boys at the Camp, including two from parents and one through 'the State of New Hampshire,'" and (2) that Grabill "was concerned that something like this would happen again and a total of three known allegations automatically implied the existence of numerous other unreported ones." We take up the two statements separately in the following sections.

A.  Grabill's   Statement   That   Three
Complaints Had Been Made Against Moss

    1.  Defamatory meaning

A statement is defamatory if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." Nash v. Keene Publ'g Corp., 498 A.2d 348, 351 (N.H. 1985). The district court held that the statement about a complaint having come through the State of New Hampshire could not reasonably be read to defame Moss by lowering him in the esteem of others. It reasoned that the statement is not about Moss but about the source of the complaint, i.e., that Moss does not charge either that Grabill said that Moss had inappropriate contact with campers or that the State had investigated Moss for having inappropriate contact. The court concluded that because Grabill told Donovan of no "action or conclusion or statement of fact by the State, other than purely ministerial function of transmitting a complaint[,] . . . Grabill's reference to the 'the State' . . . is immaterial, and could not reasonably be read as lowering Moss's esteem in the eyes of others."

    This deconstruction of the complaint misses the nub of the complaint, to wit, that Grabill falsely told Donovan he had received complaints about Moss having inappropriate contact with boys at the Camp. The district court was right when it found the reference to the State to be immaterial, but its finding led it to the wrong conclusion. Had Grabill simply--and falsely--told Donovan that he had received a complaint through an unidentified source about Moss

-6-

having inappropriate contact with boys at the Camp at which he served as a counselor, there could be no doubt that such a statement would lower him in the esteem of others.

In context, the phrase "inappropriate contact with boys at the Camp" can be reasonably understood to mean either sexual or physical misconduct. Because "inappropriate contact" is a common euphemism for child abuse, the statement is capable of defamatory meaning. It implies that Moss is accused of criminal conduct involving moral turpitude, which some jurisdictions treat as slander per se without need of proof of special damages. See, e.g., Calvert v. Corthell, 599 A.2d 69, 72 (Me. 1991) (explaining that, if proven, false statements imputing accusations of physical and sexual child abuse are defamatory per se); Huxen v. Villasenor, 798 So. 2d 209, 214 (La. App. 2001) (finding defamation per se where a parent falsely accused a teacher of physically abusing a student); see also Restatement (Second) of Torts § 571 (1977).

Moreover, the statement tends to disparage Moss in a way that is peculiarly harmful to his professional reputation. Moss alleges that he has worked for thirty years building his reputation as an archery coach and took great pride in treating his pupils professionally. He argues that the stigma of a child molestation accusation would severely impact his ability to work as an archery coach. It is axiomatic that an allegation of child abuse is peculiarly harmful to a professional working with children.

-7-

Statements that harm one's professional reputation also constitute slander per se.  Ramirez v. Rogers, 540 A.2d 475, 478 (Me. 1988) (finding statements actionable per se where gymnastics school owner sued competitor for making false statements that plaintiff was under investigation for child abuse incidents at her school because the utterances adversely reflected on her business reputation);  see also Restatement (Second) of Torts § 573 (1977); Disend v. Meadowbrook Sch., 604 N.E.2d 54, 55 (Mass. App. Ct. 1992) (reversing dismissal of a teacher's defamation action where the plaintiff claimed that an accusation of professional misconduct harmed her ability to work as a teacher).  As it involves a similar factual and procedural context, the Disend court's analysis is instructive:

> As to the letter of the headmaster complained of, it does not require a fevered imagination to think that an "incident" brought to the attention of the school trustees, the "specifics" of which warranted a teacher's immediate dismissal . . . must have involved misconduct of an egregious sort. . . . Adding to the impression of grievous professional--or worse--misconduct is the sentence in the same letter that "Mrs. Disend was inappropriate in the way she dealt with the children."  As contextual facts are developed, it may turn out that the suggestive words and phrases are innocent, but at the pleading stage the allegations of the plaintiff are to be read indulgently in the sense that the complaint may stand unless, on the face of the complaint, it is unmistakable that the plaintiff can prove no facts in support of a tenable legal claim.

Id. Likewise, at this point, we must draw all reasonable inferences in favor of Moss in considering Grabill's statement of

-8-

"inappropriate contact."

We must read words alleged to be defamatory in the context of the entire publication. Duchesnaye v. Munro Enters., Inc., 480 A.2d 123, 125 (N.H. 1984). The severity of Grabill's statement to Donovan was underlined by Grabill's further statement that "he was concerned something like this would happen again and that the existence of three known allegations automatically implied the existence of numerous other unreported ones."

Accordingly, we think that "[persons] of ordinary intelligence and common understanding could reasonably have understood the words as implying . . . wrongdoing" by Moss, and are thus capable of defamatory meaning. Thomson v. Cash, 402 A.2d 651, 653 (N.H. 1979). Moss is entitled to prove "his allegation that the defamatory meaning was in fact the one 'intended and understood.'" Id.

2. Substantial truth

The district court went on to hold that the statement about the complaint through the State was also substantially true. "A statement is not actionable [defamation] if it is substantially true." Simpkins v. Snow, 661 A.2d 772, 776 (N.H. 1995). The district court interpreted the complaint as not disputing that two other complaints had been made against Moss. On that premise, it held the statement about the State complaint was not actionable:

> [G]iven that Moss does not challenge the truth
> of Grabill's statement about the two direct

complaints, the number of complaints against Moss--two versus three--is also an insubstantial detail. Even under the facts as alleged by Moss, multiple complaints of inappropriate contact have been made against him. Thus, Grabill's statement, which does little more than imply a third similar complaint, was substantially true--in the sense that complaints about inappropriate contact had indeed been made against Moss.

This is the same premise that led the court to conclude that with Moss having acknowledged that two similar complaints had been made to the Camp, "the implication that a third complaint had been made to the State may not reasonably be read as further lowering the esteem in which Moss would be held."

We find the court's reasoning that a defamatory statement is an "insubstantial detail" if made in the context of other similar, unchallenged statements to be unpersuasive. In any event, the court's premise that "Moss does not challenge the truth of Grabill's statement" about the Camp complaints impermissibly draws an inference adverse to the pleader. That Grabill's statement about the State complaint was false is established on the face of the pleadings. In context, that Moss did not specifically allege that the statement about the Camp complaints was also false does not compel the inference that he failed to challenge it. To the contrary, Moss alleges that because he lacked the underlying information about the Camp complaints, he pressed Grabill about the specific details of the complaints and unsuccessfully requested his personnel file pursuant to New Hampshire law. Grabill refused to

provide details "except some purported partial details of one of them," and as of the filing of the complaint, Moss had not received any documentation of any complaint against him.  Thus, Grabill denied Moss access to the evidentiary support that would have enabled him to determine whether the Camp complaints had been made. Cf. Fed. R. Civ. P. 11((b)(3).  Given that Grabill's statement about the State complaint was false, the allegation that he withheld information about the Camp complaints raises a reasonable inference that Grabill's statement about the Camp complaints also was false. Moss's complaint, moreover, is directed at Grabill's entire "statement" to Donovan that he had received *three* complaints, not only the State complaint, alleging that it caused him physical and emotional injury.  Thus, the district court's conclusion that "the only reasonable inference [is] that . . . these two complaints were in fact made" is unsupportable.  Because the complaint presents a set of facts that, if proven true, would justify recovery, the judgment of dismissal must be reversed. Cooperman, 171 F.3d at 46.

B.    Grabill's Statement Regarding the Existence of Other Unreported Allegations

The district court held that the second allegedly defamatory statement, that Grabill told Donovan that "the existence of three known allegations automatically implies the existence of other unreported ones," is not actionable because it is a nonactionable statement of opinion.  We agree.

-11-

"[A] statement of opinion is not actionable unless it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Nash, 498 A.2d at 351 (internal citations omitted). See Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000) (stating that a statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts). As the district court explained, Grabill did not express an opinion that implied his knowledge of additional facts but merely offered a general theory–his belief–that in a case such as this, the number of known allegations automatically implied the existence of some larger number of actual incidents. Grabill's statement is merely his own speculation. No person could reasonably understand that statement to imply that Grabill had actual knowledge of additional incidents or complaints. Viewing the allegation in the light most favorable to Moss, we agree with the district court that the statement is an opinion and not actionable.

## II. THE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Moss also alleges a claim for intentional infliction of emotional distress. Emotional distress resulting from harm to reputation and good name caused by the publication of defamatory statements cannot give rise to a separate action for intentional infliction of emotional distress. Provencher v. CVS Pharmacy, 145

F.3d 5, 12 (1st Cir. 1998) ("New Hampshire law does not recognize a cause of action for wrongful infliction of emotional distress where the factual predicate sounds in defamation."). Instead, mental and emotional harm resulting from damage to reputation may be compensated in the form of damages for emotional distress in the defamation action. De Meo v. Goodall, 640 F. Supp. 1115, 1116 (D. N.H. 1986). Therefore, the intentional infliction of emotional distress claim can only encompass emotional distress caused by Grabill's statement to Moss that is distinct from the emotional distress caused by the damage to Moss's reputation.

New Hampshire law looks to section 46 of the Restatement (Second) of Torts to define the tort of intentional infliction of emotional distress. Morancy v. Morancy, 593 A.2d 1158, 1159 (N.H. 1991). As explicated in the Restatement:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d (1977); accord Konefal v. Hollis/Brookline Coop. Sch. Dist., 723 A.2d 30, 33 (N.H. 1998)("One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress."); Godfrey v. Perkin-Elmer Corp., 794

-13-

F. Supp. 1179, 1189 (D. N.H. 1992) ("This standard plainly anticipates outrages far beyond the indignities and insensitivity that too often taint our daily lives."(internal quotations omitted)).

False allegations of the nature of those allegedly made by Grabill may well be outrageous in light of the social stigma attached to such allegations, and the effect the allegations would have on the career of someone who works with children. However, these sources of emotional distress relate to harm caused to Moss's professional and social reputation due to public broadcast of the allegations, and are, therefore, linked to the action in defamation rather than intentional infliction of emotional distress. Moreover, as Judge McAuliffe noted, Grabill's statements to Moss were made in a conversation initiated by Moss and in response to Moss's demand for justification for the Camp's decision not to renew his employment contract. Furthermore, Moss does not allege that Grabill was acting in an aggressive or threatening manner. The standard for making a claim of intentional infliction of emotional distress is very high. "Recovery on such a claim requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, cmt. d.

-14-

Accord <u>Doyle</u> v. <u>Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996). While Grabill's statement can certainly be considered offensive, it is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d (1977).

Accordingly, we conclude that the district court properly dismissed this claim.

**III.  THE CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RIGHTS**

The district court held that Moss failed to state a claim for tortious interference with prospective contractual rights. To successfully state a claim for tortious interference with prospective contractual rights, a plaintiff must allege that the defendant "'induce[d] or otherwise purposely cause[d] a third person not to . . . enter into or continue a business relation with [the plaintiff]." <u>Baker</u> v. <u>Dennis Brown Realty</u>, 433 A.2d 1271, 1274 (N.H. 1981) (quoting <u>Bricker</u> v. <u>Crane</u>, 387 A.2d 321, 323 (N.H. 1978)). Here, Moss only points to Grabill's statements to Donovan, who was in no position to make decisions regarding Moss's future employment at the Camp. Furthermore, Moss fails even to allege that these statements caused Moss to lose his position or prospective position. In the absence of such an allegation, his claim cannot possibly succeed. <u>See</u> <u>Jay Edwards, Inc.</u> v. <u>Baker</u>, 534 A.2d 706, 709 (N.H. 1987) (stating that a central element of a tortious

-15-

interference claim is that the plaintiff was damaged by defendant's actions).  Therefore, the district court properly dismissed this element.

**IV.        THE CIVIL CONSPIRACY CLAIM**

The district court also correctly held that Moss's final claim, a civil conspiracy count, fails to allege sufficient facts to succeed.  A central element of a civil conspiracy is agreement among the actors.  <u>Jay Edwards, Inc.</u>, 534 A.2d at 709 (holding that an "essential element" of a civil conspiracy is "<u>agreement</u> on the object or course of action").  The gravamen of Moss's complaint is Grabill's allegedly false statements, but Moss fails to allege that any member of the board knew of these statements before they were made, much less that any board member planned or conspired with Grabill to make these statements.  The complaint actually alleges that Grabill made his statements before the board knew anything.  In the absence of any allegation of agreement between the board members and Grabill, the claim must fail.

**V.        CONCLUSION**

We affirm the dismissal of Moss's claims for intentional infliction of emotional distress, tortious interference with prospective contractual relations and civil conspiracy. We reverse the judgment dismissing the complaint and remand for further proceedings on the defamation claim.

**Reversed** in part and **affirmed** in part.

-16-