Lemire, James R., J.
On March 6,2006, the plaintiff, Phyllis Oropallo (“Oropallo”), brought an action in tort against Barry M. Brenner (“Brenner”), her former supervisor, alleging that Brenner improperly circulated confidential materials stemming from an internal in *148 vestigation into Oropallo’s job performance. In her amended complaint, filed on June 11, 2007, Oropallo seeks to enjoin further distribution of the materials and claims that Brenner’s publication and dissemination of the materials entitle her to damages for: (1) invasion of privacy; (2) defamation; and (3) intentional infliction of emotional distress. Brenner now moves for summary judgment on each of Oropallo’s claims. For the reasons set forth below, Brenner’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART.
BACKGROUND
The court summarizes the relevant facts, which are taken from the summary judgment record, in the light most favorable to the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
Oropallo was director of the Town of Northborough (the “Town”) Office of Family and Youth Services (“OFYS”) from November 12, 1996, to January 27, 2006, when she was terminated. Brenner has served continuously as the Town Administrator since 1997, and was responsible for supervising Oropallo from the date of his hire through the date of Oropallo’s termination.
From April 1998 through December 2005, Oropallo supervised Jason Keller in his capacity as assistant director of OFYS. At some point between 2002 and 2005, Oropallo and Keller became involved in a sexual relationship. During the summer of 2005, Keller apparently became romantically involved with a college student interning at OFYS, which resulted in friction between Oropallo and Keller, both personally and professionally.
In November 2005, Oropallo hired an organizational consultant to resolve office tensions. The consultant met only with Oropallo and Keller, and among the topics of discussion was their sexual relationship. Oropallo paid for the consultant using Line Item 5308 of the OFYS budget, which was earmarked for “Licensed clinical supervision for Director to maintain MA State professional license and receive approved consultation.”
On or around November 28, 2005, Brenner’s office requested that Town Counsel investigate the conflict at OFYS and make recommendations for improving the work environment. The result was a sixteen-page report (the “Investigation Report”), marked “CONFIDENTIAL,” which included e-mail attachments and conveyed details about the sexual relationship between Oropallo and Keller, including such specifics as Oropallo’s refusal to leave her husband for Keller and her refusal to tell her children about the affair. The Town Counsel recommended “serious disciplinary action” against Oropallo, up to and including termination.
On January 27, 2006, after a disciplinary hearing, Brenner fired Oropallo. He outlined his reasons in an eight-page missive (the “Termination Letter”), addressed to Oropallo and stamped “CONFIDENTIAL.” The Termination Letter referenced details of the Investigation Report and alleged that Oropallo had misused Town funds. The allegations of misspending arise in the following excerpts:
I am also concerned that the funds with which you sought to pay the private consultant were appropriated for the purpose of your clinical supervision. The purposes of such line items are specifically provided in Town’s Exhibit 7, which includes moneys to be used for “Licensed clinical supervision for Director to maintain MA state professional license and receive approved consultation.” Clearly, hiring the consultant to mediate the conflict between yourself and Mr. Keller does not fall into this purpose, or any other purpose articulated for line item 5308. During the hearing your defense to this was that you have spent outside the appropriation in the past without consequence and I, as the Town Administrator, have never before questioned such expenses. First, this is the first time it has been brought to my attention that you were using funds for outside their appropriated purpose. The statements in your purchase orders are hardly specific enough to give me any reason to believe you were spending outside of your appropriation. Second, I did not question you regarding your expenses because there was no reason to. The description of the services in the purchase orders is consistent with your clinical supervision. Finally, and most significant, you are in charge of the budget for your Department. You could have requested less money for clinical supervision and put additional funds into another line item, for example, training. As you are aware, Town Meeting votes on approval of the budget and your budget is also reviewed by the Appropriations Committee prior to Town Meeting. In order to provide an accurate picture of the reasons you were requesting the money, you need to be forthright. While you claim it was an innocent mistake, you are also aware of the budget problems facing the Town. If money is being allocated to training, it should be up to the Town to determine whether such expenses are truly necessary. By camouflaging the purpose of the monies, you take away the ability of the Town to make budget cuts where necessary. Whether good intentioned or not, it is a serious lack of judgment, which in itself, even if taken, alone, provides good cause for termination of your employment . . . None of the witnesses presented on your behalf spoke to the issue of the misuse of Town monies for a private consultant. . .
(Emphasis added.)
During February 2006, Brenner distributed the Investigation Report and Termination Letter (the “Confidential Materials”) to twenty-one individuals, including the Town Board of Selectmen, the board of *149 directors of Northborough Family and Youth Services, members of the Northborough Youth Commission, and employees of OFYS. Though some of the individuals were Town employees, several worked with OFYS in a volunteer capacity.
Brenner also distributed the Confidential Materials to the Department of Unemployment Assistance around the time that Oropallo applied for unemployment benefits. Oropallo claims that this was an orchestrated effort to spite her. She also alleges that one of Brenner’s motives in disseminating the Materials was to gamer support from other Town officials to eliminate funding for OFYS. Brenner stated in an affidavit that he held no ill will toward Oropallo at the time he distributed the Materials. Oropallo claims that she has been shunned and subjected to ridicule in the community as a result of Brenner’s actions.
DISCUSSION
I. Summaiy Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corr’s, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Analysis
A. Qualified Immunity
Brenner first argues that this court should grant his motion for summaiy judgment because he enjoys qualified immunity, and is therefore immune from all three of Oropallo’s tort claims. A public official exercising judgment and discretion is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption. Nelson v. Salem State Coll, 446 Mass. 525, 537 (2006).
Neither party disputes that Brenner is a public official. However, there still exists a question of fact as to whether Brenner published the Confidential Materials with spite or malice. Though Oropallo does not offer direct evidence that Brenner had spiteful motives, “(m)alice maybe shown by the proof of facts from which a reasonable inference of malice may be drawn.” Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass.App.Ct. 550, 555 (2003), rev. denied, 440 Mass. 1110 (2003). To prevail, “the plaintiff should be prepared to demonstrate a link between the defendant’s conduct and evidence of a spiteful purpose or personal hostility." Id.
Brenner stated in his affidavit that he held no ill will toward Oropallo and never intended to publicly humiliate her. As the party opposing the summaiy judgment motion, Oropallo has offered little to support her contention that Brenner acted in bad faith, and, under most circumstances, this court would be inclined to find that Oropallo had not met her burden of alleging specific facts that would establish the existence of a genuine issue of material fact on this point. See Pederson, 404 Mass. at 17. Nevertheless, this court finds that certain conduct alleged — specifically, Brenner’s pointed effort to contest Oropallo’s bid for unemployment benefits, combined with his enigmatic decision to disclose the Confidential Materials in their entirety is sufficient to raise a triable issue of fact as to whether Brenner acted in a spiteful manner, which would strip him of qualified immunity for his discretionary actions. Because the court does not determine on summaiy judgment whether Brenner enjoyed qualified immunity, it will now turn to whether the plaintiff has a reasonable expectation of proving each essential element of her claims.
B. Count I — Invasion of Privacy
General Laws c. 214, §1B, creates a statutoiy right against “unreasonable, substantial or serious interference” with a person’s privacy. This section has been interpreted to prohibit “the disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.” Bratt v. International Bus. Machs. Corp., 392 Mass. 508, 518 (1984), citing Cort v. Bristol-Myers Co., 385 Mass. 300, 302-08 (1982).
1. Oropallo’s Expectation of Privacy
Before the court even reaches the question of whether Brenner had a legitimate, countervailing interest, it must first determine whether highly personal or intimate facts were, in fact, disclosed. In other words, the plaintiff must have had a reasonable expectation of privacy in the information communicated in order to sustain a claim under G.L.c. 214, OIB.[1]
Oropallo claims that Brenner disclosed true private facts concerning her health when he distributed his Termination Letter, which notes that Oropallo attributed her questionable job performance during August and September 2005 to a “health scare.” The court finds that the complained-of reference to a “health scare” is too ambiguous to support a claim that Brenner *150 conveyed highly intimate details about Oropallo’s life that amount to an “unreasonable, substantial, or serious interference” with her privacy in violation of G.L.c. 214, §1B. There is further support for this finding because Brenner’s reference was directly related to Oropallo’s own explanation for her on-the-job conduct and the nature of the “scare” was not disclosed.
With respect to references in the Investigation Report to Oropallo’s spouse and children — namely, that Oropallo’s husband knew about her affair with Keller, and that Oropallo refused to leave her husband or to tell her children about her affair with Keller — the court finds that the information is sufficiently personal and intimate to create a genuine issue of material fact as to whether the disclosure was justified by a legitimate, countervailing interest. Mulgrew v. Taunton, 410 Mass. 631, 637 (1991). Brenner’s counsel suggests that the reference to Oropallo’s refusal to leave her husband or tell her children of the affair was included only to explain Keller’s stated reasons for ending the relationship. Brenner’s counsel also urges that the only “fact” embedded in that statement, which Oropallo has not attempted to prove, is that Keller ended the relationship because of Oropallo’s decisions with regard to her family. The court declines to adopt such a conveniently narrow interpretation of the statement at issue. By its very language, the statement also discloses the intimate facts that Oropallo refused to leave her husband or to tell her children of her affair. Whether Brenner’s publication of those facts was a reasonable interference with Oropallo’s privacy is a question for the jury. Id.
Ultimately, Oropallo’s privacy claims center on the disclosure of facts related to her sexual affair with Keller. Generally, details about one’s sexual affairs fall within the sphere of private and highly intimate information. See, e.g., Peckham v. Boston Herald, Inc., 48 Mass.App.Ct. 282, 287 (1999). However, “a person may relinquish a privacy right by engaging in certain activities, or by placing himself in certain contexts where his legitimate expectation of privacy is reduced.” Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 521 (1991). Further, public employees, by virtue of their public employment, have diminished expectations of privacy. Pottle v. School Comm. of Braintree, 395 Mass. 861, 866 (1985).
Here, the record indicates that Oropallo and Keller broadcast elements of their relationship over the Town of Northborough’s e-mail server. There is scant authority on the subject, but some courts have suggested that there is no reasonable expectation of privacy in information transmitted via work e-mail where an employer’s e-mail policy warns employees that their messages may be monitored. Compare Garrity v. John Hancock Mut. Life Ins. Co., 2002 WL 974676 at *1-*2 (D.Mass., May 7, 2002) (Zobel, J.) (unpublished) (plaintiff did not have a privacy interest in unprofessional comments voluntarily communicated over a company’s e-mail system where the company’s e-mail policy expressly reserved the right to access employees’ e-mail files), with Restuccia v. Burk Tech., Inc., 1996 WL 1329386 at *2-*3 (Mass.Super., Aug. 13, 1996) [5 Mass. L. Rptr. 712] (Lopez. J.) (plaintiffs may have had reasonable expectation of privacy where there was no company policy against using e-mail for personal messages, and employees were not told that supervisors had access to their e-mails).
Here, there is some dispute over the authenticity of Brenner’s copy of the Town’s e-mail policy, which purportedly warns employees that their e-mail accounts are subject to scrutiny. However, the policy, even if authentic, is not determinative of Oropallo’s expectation of privacy in this particular case. Though Brenner’s counsel directs the court to a particularly sentimental e-mail message from Keller to Oropallo in which Keller alludes to the romantic nature of their relationship, it is unclear with respect to Oropallo’s own communications whether her flirtatious-but-ambiguous e-mail banter amounts to the type of voluntary exposure that would cast into the public domain the fact that she and Keller were involved in a sexual relationship. Whether a particular person has relinquished an expectation of privacy due to the manner and circumstances of disclosure is a factual question. Peckham, 48 Mass.App.Ct. at 286. Because this court finds that there is a genuine issue of material fact as to whether Oropallo retained some expectation of privacy in her romantic interactions with her subordinate, it now turns to whether Brenner had a legitimate, countervailing interest in disclosing the confidential information.
2. Reasonableness of Brenner’s Disclosure
Brenner contends that, even assuming arguendo that Oropallo had a reasonable expectation of privacy in details about her relationship, his dissemination of the Confidential Materials was justified by legitimate interests in informing individuals connected to OFYS of the reasons for the office’s dysfunction and assuring Town workers that there was good reason for Oropallo’s departure. Brenner also maintains that the disclosure was reasonably calculated to bear only on Oropallo’s capacity to perform her job, and was limited to individuals with a common interest in Oropallo’s performance.
In determining whether the statutory right to privacy was violated within the employment context, “it is necessary to balance the employer’s legitimate business interest in obtaining and publishing the information against the substantiality of the intrusion on the employee’s privacy resulting from the disclosure.” Bratt, 392 Mass, at 521. This standard applies to public, as well as private, employment. Gauthier v. Police Comm’r of Boston, 408 Mass. 335, 338 (1990).
The disclosure of private facts about an employee, even if the disclosed facts are kept internally within a company, maybe sufficient to impair an employee’s right of privacy. See Bratt, 392 Mass, at 509-10, 519. For the purposes of summary judgment, this court cannot say as a matter of law that an employer’s interest in the *151 sexual relationships between supervisors and subordinates outweighs an employee’s expectation that the details of her relationships will be kept private. Therefore, there exists a genuine issue of material fact as to whether Brenner had a legitimate interest in publishing the Confidential Materials to Town employees and volunteers that outweighed Oropallo’s interest in keeping aspects of her personal life from public view.
C. Count II — Defamation (Libel)
Though summary judgment is generally favored in defamation cases, the defendant still bears the burden of establishing that there is no genuine issue of material fact. Godbout v. Cousens, 396 Mass. 254, 258 (1985); see also Mass.R.Civ.P. 56(c).
Oropallo’s libel claim focuses on Brenner’s statements that Oropallo misused Town funds. Oropallo refers to the Confidential Materials generally, but her claim relates specifically to Brenner’s Termination Letter and the following quotations therein:
Clearly, hiring the consultant to mediate the conflict between yourself and Mr. Keller does not fall into this purpose, or any other purpose articulated for line item 5308.
“. . . you were using funds for outside their appropriated purpose.”
“By camouflaging the purpose of the monies, you take away the ability of the Town to make budget cuts where necessary.”
”... misuse of Town monies for a private consultant.”
Oropallo argues that the aforementioned quotations, at best, impeach Oropallo’s honesty and integrity and, at worst, impute criminal conduct. In response, Brenner asserts that: (1) the statements are true; (2) even if they are not true, they are statements of opinion, and thus are not actionable; and (3) Brenner, as a public official, had a conditional privilege to make the allegedly defamatory statements. Because the court finds that Brenner’s comments are non-actionable statements of opinion, it need not address the availability of a truth defense or conditional privilege.
1. Statement of Fact Versus Statement of Opinion
A defendant in a libel action is entitled to summary judgment if the challenged statements cannot reasonably be construed as assertions of fact. King v. Globe Newspaper Co., 400 Mass. 705, 709 (1987). Whether a statement is one of fact or opinion is a question of law, unless it could reasonably be understood both ways. Id. Though the First Amendment does not protect false statements of fact, pure opinions are not actionable because there is no such thing as a false idea. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974) (emph. added).
Brenner contends that his statements are mere expressions of opinion based on fully disclosed, nondefam-atory facts. Such statements are constitutionally protected and cannot serve as the basis for a defamation action, no matter how unjustified, unreasonable, or derogatory the opinion may be. Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993). Indeed, a statement in the form of an opinion is not actionable unless it implies the allegation of undisclosed defamatory facts as the basis for the opinion. Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 338-39 (1980).
Here, Brenner did, in fact, disclose the basis for his conclusion that Oropallo misappropriated Town funds. In his Termination Letter, he cited Appropriations Committee guidelines and observed that Oropallo’s use of the funds was inconsistent with those guidelines. Brenner even went so far as to address Oropallo’s defense that she had used funds in a similar manner before without consequence, explaining that Oropallo’s past purchase orders were not detailed enough to apprise him of any misspending. Indeed, far from leaving the reader to imagine undisclosed defamatory facts that would support his statement that Oropallo misused Town funds, Brenner carefully and logically laid the factual predicate for his conclusion. Accordingly, the “logical nexus between the facts and the opinion was sufficiently apparent to render unreasonable any inference” that Brenner’s critical commentaiy must have been based on undisclosed, defamatory facts. Lyons, 415 Mass, at 266.
Though the court is sensitive to the effect that Brenner’s comments may have had on Oropallo’s reputation, it cannot allow Oropallo’s defamation claim to go forward when Brenner clearly went to considerable lengths to reveal the basis for his remarks. See, e.g., Myers, 380 Mass, at 339, quoting Restatement (Second) of Torts, §566, comment c (1977) (‘Thus if I write, without more, that a person is an alcoholic, I may well have committed a libel prima facie; but it is otherwise if I write that I saw the person take a martini at lunch and accordingly state that he is an alcoholic”).
Oropallo insists that the remarks could have been understood by the average reader as a statement of fact, and that the issue must therefore be left to the jury. Lyons v. New Mass Media, Inc., 390 Mass. 51, 59 (1983). For her part, she claims that the Department of Unemployment initially denied her petition for unemployment benefits after receiving a copy of the Confidential Materials because it determined from the Materials that she had engaged in criminal misconduct. But, even taking the facts in the light most favorable to Oropallo, she has not raised a triable issue as to whether recipients could have interpreted Brenner’s letter as an authoritative declaration that Oropallo criminally misappropriated funds, rather than as a mere expression of Brenner’s opinion that her use of funds was improper. On the contrary, the basis for Brenner’s conclusions is fleshed out so substantially that “hearers could make up their own minds and generate their own opinions which might or might not be in accord” with Brenner’s. National *152 Ass’n of Gov’t Empl., Inc. v. Central Broad. Corp., 379 Mass. 220, 226 (1979). These circumstances “remove the case from the category of actionable defamation, no matter how invidious or derogatory” the implications of Brenner’s opinion may be. Id. at 226-27. In fact, even assuming the Department of Unemployment found that Oropallo had committed criminal conduct, the only logical inference is that the Department reached that conclusion independently, because nothing in the Termination Letter compels such a finding.
Oropallo makes much of Brenner’s choice of language, i.e., “outside their appropriated purpose” and “camouflaging,” which conjures images of white-collar crime. If Brenner’s statements could reasonably be read to impute conduct amounting to criminal misappropriation, as Oropallo suggests, then his statements would certainly be “accusations which can be proved true or false at trial.” New Mass Media, 390 Mass. at 60. However, as discussed above, no reasonable reader could construe Brenner’s comments as an assertion of fact or as an opinion based on undisclosed and defamatory facts when the nexus between the factual support and the opinion is laid bare. Lyons, 415 Mass. at 266.[2] Accordingly, this court finds that summary judgment is appropriate with respect to Oropallo’s defamation claim.
D. Count III — Intentional Infliction of Emotional Distress
To succeed on a claim for intentional infliction of emotional distress, the plaintiff must prove that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiffs distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
Brenner argues that Oropallo cannot prove that he intended to inflict emotional distress on her. As with most cases where the defendant’s intent is at issue, the court cannot say as a matter of law that Brenner did not intend to inflict emotional distress. With respect to Brenner’s motives, Oropallo has produced the “requisite quantum of evidence to enable [her] to reach a jury with her claim. Tetreault v. Mahoney, 425 Mass. 456, 467 (1997).
Brenner also argues that his conduct cannot possibly be characterized as “extreme and outrageous.” To prevent excessively broad recovery, the Supreme Judicial Court has declared that “liability cannot be predicated upon ‘mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,’ nor even is it enough ‘that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.’ “ Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987).
Though there are certainly cases where the court will decide as a matter of law that conduct has not risen to the level of “extreme and outrageous,” this case is not one of them. In considering whether Or-opallo has a claim for intentional infliction of emotional distress, the trier of fact is entitled to “put as harsh a face on [the defendant’s] actions as the basic facts would reasonably allow.” Richey v. American Auto. Ass’n, Inc., 380 Mass. 835, 839 (1980). Accordingly, there is a triable issue as to whether Brenner’s conduct in purposely, perhaps maliciously, publishing intimate details of Oropallo’s personal life exceeds “all possible bounds of decency” and is “utterly intolerable” in the minds of reasonable citizens. Id. at 838-39.
E. Count IV — Injunctive Relief
Oropallo has asked the court to enjoin Brenner from further distribution of the Confidential Materials. On this count, Brenner simply rests on the argument that there is no evidence to support Oropallo’s request for an injunction.
Because this court finds that questions of fact remain as to whether Brenner’s dissemination to this point has violated Oropallo’s privacy rights and risen to the level of intentionally inflicted emotional distress, summary judgment is inappropriate on the issue of whether it is within Brenner’s right to further disseminate the Confidential Materials. See Kourouvacilis, 410 Mass. at 716.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is DENIED as to Count I, except with respect to claims related to references to the plaintiffs health. The defendant’s motion for summary judgment is further DENIED as to Counts III and IV. As to Count II, the defendant’s motion for summary judgment is ALLOWED.

 To the extent that Oropallo includes in her claim for invasion of privacy allegations that she terms false and defamatory, the court need not address them because the privacy statute protects only against public disclosure of private facts, as distinguished from untrue statements that might provide the basis for defamation claims. Bratt, 392 Mass. at 518.

The court concedes that a termination letter may generally be a communication more in the nature of a report of fact than an exercise in commentary. See Disend v. Meadowbrook Sch., 33 Mass.App.Ct. 674, 677 (1992). However, in this case, Brenner’s thorough disclosure of the facts on which his remarks were based point toward finding that the letter simply relayed his opinion as Oropallo’s supervisor. In Dis-end, by contrast, the Massachusetts Appeals Court held that it was improper to dismiss the plaintiffs complaint for failure to state a claim where a school headmaster’s report simply cited an “incident” as grounds for termination, thereby implying the existence of undisclosed facts that might defame the plaintiff. Id.